JOHN A. REDDING *vs.* MYRTLE V. REDDING.

Middlesex.    April 9, 1986. — July 17, 1986.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Divorce and Separation,* Jurisdiction, Division of property, Child custody, Child support, Attorney's fees. *Jurisdiction,* Probate Court. *Uniform Child Custody Jurisdiction Act.*

Discussion of the application of G. L. c. 209B, the Massachusetts version of the Uniform Child Custody Jurisdiction Act, to the exercise of jurisdiction by a State judge in a child custody matter. [105]

In circumstances where a husband residing in Massachusetts filed a complaint for divorce in a Massachusetts Probate Court in October, 1983, after his wife had moved to Georgia with their daughter, and in December, 1983, amended his complaint to seek joint legal custody of the daughter; where the wife in May, 1984, brought a custody action in a Georgia court; and where, after the Massachusetts and Georgia judges consulted by telephone, the Georgia judge declined to exercise jurisdiction over the initial custody issues, the Massachusetts court had jurisdiction pursuant to G. L. c. 209B, § 2 (*a*) 4, over the daughter's custody. [105-106]

On appeal from a divorce judgment, this court vacated the judgment with respect to the division of the parties' assets and remanded the case for further findings, where it appeared that the judge's findings and conclusions concerning asset distribution placed no significance on the fact that, from the time of the parties' separation until the judgment was entered, the wife provided all financial support for the parties' daughter and assumed full responsibility for her care, or on the fact that the wife had moved to her parents' home where, although she could receive aid in the daughter's upbringing, there might be fewer opportunities than elsewhere for the advancement of the wife's career. [107-109]

On appeal from a divorce judgment, this court vacated the child support provisions of the judgment, which ordered the husband to pay an amount considerably less than one half of the annual expenses the wife was likely to incur and which represented less than 7% of the husband's annual income. [109-110]

Where this court vacated portions of a divorce judgment respecting division of property and child support and ordered the matter remanded for reconsideration and further findings, the determination that each party was to pay his or her own counsel fees was also to be open for reconsideration on remand. [110-111]

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on October 7, 1983.

The case was heard by *Edward M. Ginsburg, J.*

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Ruth R. Budd* (*Kathleen A. Bryan* with her) for the defendant.

*Paul D. Pearson* (*Michael Fredrickson* with him) for the plaintiff.

*Marilyn Ray Smith,* pro se & others, amici curiae, submitted a brief.

WILKINS, J. On August 6, 1984, by a judgment nisi of divorce, a Probate and Family Court judge (1) awarded the wife legal and physical custody in Georgia of the parties' daughter, Jessica, (2) divided the parties' assets, (3) ordered that the husband pay child support, and (4) left each party to pay his or her own attorney's fees. On appeal, the wife challenges the Probate and Family Court's jurisdiction to determine custody and contests the division of assets, the amount of weekly child support payments, and the judge's determination not to order the husband to pay her attorney's fees. We transferred her appeal to this court. We reject the wife's challenge to the jurisdiction of the Probate Court to determine custody, but we remand the case for redetermination of the issues of property division, child support, and allocation of legal fees.

We summarize certain of the judge's findings. The parties were married in Maryland in 1979 and moved into a house the husband had recently purchased in Carlisle, Massachusetts. Jessica was born in January, 1980. The wife, who had been an associate in a Washington, D.C., law firm before her marriage, enrolled in the LL.M. tax program at Boston University in September, 1980. They continued to live in Carlisle until December, 1981, when the wife and Jessica went to Georgia where the wife's parents lived. The wife and Jessica returned to Carlisle and stayed from mid-March, 1982, until late July, 1982, and again from late May to late July, 1983. The husband, who has a master of science degree in electrical engineering from the Massachusetts Institute of Technology, started his own business in May, 1980. The wife, a graduate of the Hast-

ings College of Law, became an assistant professor of law at Mercer University in Macon, Georgia, in July, 1982 (one month after she received her master's degree).

1. The wife challenges the court's jurisdiction to enter any child custody order in this proceeding.[1] The husband has not appealed, and the wife acknowledges that the terms of the custody order are satisfactory.[2] Nevertheless, for some tactical reason, the wife wants the custody portion of the judgment vacated. After the entry of the judgment nisi, at the husband's request the judge made supplemental findings of fact which demonstrate on the record a basis for jurisdiction.

The husband filed his complaint for divorce in October, 1983, and amended it in December, 1983, to include a prayer for joint legal custody of Jessica. The wife filed a custody action in Georgia in May, 1984. A hearing in the Georgia proceeding was held on July 20, 1984. The husband questioned the Georgia court's jurisdiction in light of the pending prior Massachusetts custody proceeding. After the judge heard one day's evidence on the custody issue, he said he would prepare a transcript of that proceeding and would advise the Massachusetts judge that the transcript was available. He added that he would withhold any decision on custody and whether to receive further evidence until he discussed the matter with the Massachusetts judge.

Four days later trial began in Massachusetts. Here the wife asserted that the court lacked jurisdiction to determine custody. We know from the judge's supplemental findings that, after the trial concluded on July 31 and before his findings and rulings were entered, the judge spoke on the telephone at least twice with his Georgia counterpart concerning the jurisdictional

---

[1] Although the wife has legal and physical custody of Jessica in Georgia, the husband has monthly visitation rights there and the right to have Jessica visit him in Massachusetts at various times, all at his expense.

[2] One might expect that now the wife would have no sound reason to question the jurisdiction of the Probate Court to enter the custody order. We deplore the inability of the parties to resolve the nonissue of custody, perhaps by the entry in the pending Georgia custody proceeding of a consent judgment concerning custody identical to the Massachusetts judgment.

issues and the substance of the custody provisions to be included in the judgment nisi. According to the judge's supplemental findings, the two judges agreed that the Massachusetts court "was the more appropriate forum for making the initial custody and visitation determination, and that the Georgia court was the more appropriate forum for dealing with any problems of enforcement or modification thereof." They considered that proceedings were pending first in Massachusetts and that bifurcation of divorce and custody proceedings would be wasteful and dilatory. The parties had agreed that Massachusetts should resolve all property and financial issues, including child support. Quite rightly, the two judges agreed that child support could not be determined without first deciding custody.

The wife properly points out that the judge indicated neither the basis on which he exercised jurisdiction nor the conclusions the Georgia judge had reached concerning jurisdiction under Georgia law. Each State has adopted a version of the Uniform Child Custody Jurisdiction Act (UCCJA). 9 U.L.A. (Master ed. 1979). See G. L. c. 209B (1984 ed.); Ga. Code Ann. §§ 74-501 — 74-525 (Harrison 1981). The judge's findings indicate that, after consultation, the two judges agreed that the initial custody issues should be determined in Massachusetts. It would be strange if the UCCJA did not permit the implementation of that agreement. The uniform act and the Massachusetts act both encourage communication, cooperation, and mutual assistance between courts and seek to avoid jurisdictional competition and conflict. UCCJA § 1(a). St. 1983, c. 680, § 2 (*a*).[3]

The Massachusetts court had jurisdiction to determine custody of Jessica under G. L. c. 209B, § 2 (*a*) (4), because "another state [here Georgia] has declined to exercise jurisdiction on the ground that the commonwealth is the more appropriate forum to determine the custody of the child, and [because]

---

[3] In cases such as this it seems appropriate to use the telephone as the means of communication. See *Berry* v. *Berry,* 466 So.2d 138, 140 (Ala. Civ. App. 1985); *McCarron* v. *District Court for the County of Jefferson,* 671 P.2d 953, 955 (Colo. 1983); *Neger* v. *Neger,* 93 N.J. 15, 34 (1983). We do recommend that each judge make a prompt written record of his or her conclusions and that the basis for any agreement be set forth, in at least general terms, in documents of record.

it is in the best interest of the child that a court of the commonwealth assume jurisdiction." The Georgia judge's agreement that Massachusetts was the more appropriate forum to make the initial custody determination (see G. L. c. 209B, § 2 [a]) has a rational basis on the record and constitutes a declination of initial jurisdiction in Georgia. The Massachusetts judge did not explicitly find, as he should have (stating his reasons), that assumption of jurisdiction here was in Jessica's best interest. Although G. L. c. 209B, § 2 (a) (4), does not set forth considerations relevant to whether the court's assumption of jurisdiction is in the best interest of the child, § 2 (a) (2) does. The child and at least one parent must have a "significant connection" with the Commonwealth, and "substantial evidence concerning the child's present or future care, protection, training, and personal relationships" must be available here. The record, which includes a transcript of the Georgia custody hearing, warrants the judge's implicit finding that the assumption of jurisdiction here was in Jessica's best interest.

We need not pause to consider whether the Massachusetts court properly had jurisdiction of the custody aspect of this proceeding before the Georgia judge declined jurisdiction. We find no support either in G. L. c. 209B or in the UCCJA for the judge's view that the uniform act was never intended to restrict his jurisdiction to decide custody issues when both parties have appeared and have agreed that the court should decide all other aspects of their divorce proceeding. The decision of a Massachusetts court to exercise jurisdiction and to make a custody determination must be based solely on G. L. c. 209B. Nevertheless, by the time the judge made his custody determination, G. L. c. 209B, inserted by St. 1983, c. 680, had become effective and the conditions of § 2 (a) (4) had been met.[4]

---

[4] We need not and should not decide whether the Georgia judge properly declined jurisdiction of the initial custody determination. Under that State's statute, the judge was directed not to exercise jurisdiction if, at the time of the filing of the custody petition, a custody proceeding was already pending in "another State exercising jurisdiction substantially in conformity with [the Georgia act]." Ga. Code Ann. § 74-507(a) (Harrison 1981). The Mas-

2. In her challenge to the judge's division of assets, the wife argues that, as a result of the judgment nisi, the husband's assets are substantial and she is left in debt. After making findings on all elements he was required to consider under G. L. c. 208, § 34 (1984 ed.), the judge directed the husband to pay the wife $15,000 "in satisfaction of all claims for alimony or a division of property under M.G.L. c. 208, § 34." His only explanation as to how he arrived at the amount awarded was to state that the division of assets reflected his "assessment of what each party directly or through others contributed to the marriage and all the factors under M.G.L. c. 208, § 34."

The wife particularly complains that the judge overlooked (a) the substantial appreciation of the value of the marital home between the time of the marriage and the entry of judgment and (b) the value of the husband's business. The husband bought the house shortly before the marriage, investing approximately $12,000. At the time of the hearing, the value of the equity in the house exceeded $80,000. The husband's business, which he commenced during the marriage, was worth approximately $200,000 at the time of the hearing, but had little value in December, 1981, when the wife first went to Georgia with Jessica.

If a judge has made findings consistent with his obligations under G. L. c. 208, § 34 (*Rice* v. *Rice,* 372 Mass. 398, 402-403 [1977]), indicating that he has fairly considered all factors relevant under § 34 and has not considered any irrelevant matter, his determinations as to alimony and property division may not be reversed unless "plainly wrong and excessive." See *Ross* v. *Ross,* 385 Mass. 30, 37-38 (1982); *Bianco* v. *Bianco,* 371 Mass. 420, 422-423 (1976); *Robbins* v. *Robbins,*

---

sachusetts court may have been proceeding substantially in conformity with the Georgia act (see *id*. § 74-504[2] which closely follows § 3[2] of the uniform act), even if the Massachusetts court might not have had jurisdiction under G. L. c. 209B, § 2. Section 2(*a*)(2), the analog of § 3(2) of the uniform act, includes language incorporated from the Parental Kidnapping Prevention Act (28 U.S.C. § 1738A[c][2][B] [1982]), and is more restrictive of jurisdiction than are § 3(2) of the uniform act and § 74-504(2) of the Georgia act. See generally Coombs, Interstate Child Custody: Jurisdiction, Recognition, and Enforcement, 66 Minn. L. Rev. 711, 777-780 (1982).

16 Mass. App. Ct. 576, 579 (1983). The judge's reasons for his conclusions, however, must be apparent in his findings and rulings. Any failure in the decision-making process to consider and explain the effect of an important fact may require reversal of the judgment in order to permit consideration and explanation of the omitted subject. See *Putnam* v. *Putnam*, 5 Mass. App. Ct. 10, 17 (1977) ("the rationale for the division does not appear either explicitly or by clear implication"); Inker & Clower, Towards a New Justice in Marital Dissolution: The Massachusetts Statutory Scheme and Due Process Analysis, 16 Suffolk U.L. Rev. 907, 925 (1982) ("mere listing of findings, even if detailed, is not enough"). See also *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811 (1985) (careful findings under G. L. c. 208, § 34, will not preclude reversal of clearly inadequate financial arrangement).

The judge concluded that the "short term" marriage was a "failure from the start" and that the husband and wife did not work together as partners toward the development of the marital assets. Each person entered the marriage as an independent professional. "[They] lived separate lives and were never able to communicate with each other or to form a lasting partnership." Because "their career paths appear to have been in conflict," they never "pulled together as a family." The judge also found that their financial contributions to the development of each other's careers offset one another.

The judge was warranted in concluding that this was not a typical marriage in which, whether as wage earner or as homemaker, each partner contributed to rearing children and accumulating marital assets. Each party has a respectable income; neither needs alimony. The wife left the marriage with a master of laws degree, $15,000 from the husband, and few other assets. The husband retained the marital home, the value of which had increased largely because of inflation and a general appreciation in the real estate market. He also retained his business, which had no market value when in 1981 the wife left and took a job teaching law in Georgia, but had a value of $200,000 at the time of the divorce hearing. The model from which the principles of G. L. c. 208, § 34, derive (see

*Hay* v. *Cloutier,* 389 Mass. 248, 254 [1983]) does not easily fit this marriage.

The findings and conclusions concerning asset distribution appear to place no significance either on the fact that, from the time of the parties' separation until the judgment was entered, the wife provided all Jessica's financial support and assumed full responsibility for Jessica's care, or on the fact that the wife has moved to her parents' home where, although they can aid in Jessica's upbringing, the community may offer fewer opportunities for the wife's career advancement than are available in many other places. The judge's conclusions concerning asset division should have explicitly reflected whether and, if so, how he weighed the wife's possible career sacrifices and her contributions to Jessica's care.

On remand, the judge should supplement his discussion to address the omitted subjects. If he concludes that the wife's apparent career sacrifices and her recent contributions to child care do not require a change in the result, he should explain why. If he concludes that the omitted subject should be reflected in some additional way, he would be warranted in doing so through an adjustment in the division of assets, in the award for child support, or both. The division of property will necessarily affect the ability of each party to contribute to child support.

3. The judge's findings and conclusions do not adequately justify his award to the wife of only $55 a week for child support. On the record, the allowance may not be justifiable as a matter of law. The judge stated that the "order takes into account the current economic condition of the parties, the needs of the child, and the expenses that the husband will incur to exercise his visitation rights." The judge made no determination of what the child's needs were.[5] Moreover, the judge did not discuss how the relative income and liabilities of the husband and the wife affected his conclusion. The husband had an annual

---

[5] At trial the wife overstated Jessica's needs for financial support, and her appellate counsel has perpetuated that overstatement. After corrective adjustments, Jessica's total annual expenses appear to be well over $6,000.

income of $42,500 (plus fringe benefits) from an apparently prospering company which he owns and controls. The wife's income was $35,000 a year. After reflecting the husband's payment of $15,000 to the wife, she remained in debt, and he had net assets of more than $225,000. The judge noted that the husband will incur expenses in visiting Jessica and in having her visit him in Massachusetts, but he made no finding as to what those expenses would be. Nor did the judge consider the consequences if the husband should not exercise his visitation rights and thus not incur the associated expenses.

We remand the case for further consideration of the propriety, in the circumstances, of awarding the wife only $2,860 a year for child support. This amount is considerably less than one-half the annual expenses the wife is likely to incur. It represents less than 7% of the husband's annual income. Thus the portion of the financial obligations for the support of Jessica placed on the wife exceeds the husband's, absolutely and as a percentage of annual income.[6] Although a judge has considerable discretion in determining support obligations, children are entitled to adequate support and maintenance reasonably within the power of both parents to furnish it. *Angelone* v. *Angelone,* 9 Mass. App. Ct. 728, 731 (1980). See *Whitney* v. *Whitney,* 325 Mass. 28, 31 (1949). See also *Silvia* v. *Silvia,* 9 Mass. App. Ct. 339, 340-341 (1980). In his reappraisal, the judge should consider our discussion of the division of assets. There is a value, although not easily measured, to the wife's substantial custodial contributions (see *Earle* v. *Earle,* 13 Mass. App. Ct. 1062, 1064 [1982] [rescript opinion]), and there appears to be a possible negative impact on the wife's career due to her place of residence.

4. The judge left each party to pay his or her own counsel fees. The issue, including fees and costs associated with this appeal, will be open for reconsideration on remand. See *David-*

---

[6] There is some ground for the view that the noncustodial parent's child support contribution might best be related to a percentage of his or her income so that the child may benefit from that parent's financial success. Ginsburg, Guidelines for Child Support Orders, 3 Mass. Fam. L.J. 49, 49 (1985) (income sharing approach "is the fairest and easiest to apply").

*son* v. *Davidson,* 19 Mass. App. Ct. 364, 378 (1985); *Zildjian* v. *Zildjian,* 8 Mass. App. Ct. 1, 17 (1979). We do not suggest that an explicit order that the husband pay all or part of the wife's attorney's fees is required. See Ginsburg, M.G.L. c. 208, § 34 — Some Observations About the Division of Property Leading to Predictability and Consistency, 25 B.B.J. No. 1, at 10, 12 (1981).

The judge seems to have concluded improperly that the wife was at fault in raising the question of the Massachusetts court's jurisdiction to determine Jessica's custody and in commencing the Georgia custody proceeding. He characterized the wife's position as exacerbating the conflict between the parties and unnecessarily increasing the costs of the proceedings. The question of jurisdiction of the custody question in any Massachusetts court was certainly problematic until the Georgia judge declined jurisdiction, and the wife's position on jurisdiction, even then, is far from frivolous, although it is not clear that, as a practical matter, the point was worth pursuing on appeal.

5. We vacate the judgment of divorce nisi but only with respect to the division of assets stated in the eighth paragraph; the award of child support, stated in the sixth paragraph; and the determination, stated in the eleventh paragraph, that "each party shall be responsible for his/her respective attorney's fees." As to these matters, the case is remanded to the Probate and Family Court for further consideration in light of this opinion. The judgment of divorce nisi is otherwise affirmed.[7]

*So ordered.*

---

[7] Although in his findings of fact and rulings of law the judge indicated that Georgia courts should consider any problems of enforcement or modification of his custody and visitation order, the judgment nisi itself does not make the point in such terms. The judge should feel free to supplement the judgment nisi in this respect.