629 So.2d 187 (1993)
Linda K. ZAK, Appellant,
v.
Paul J. ZAK, Appellee.
No. 92-04050.
District Court of Appeal of Florida, Second District.
November 5, 1993.
Rehearing Denied December 14, 1993.
Stevan T. Northcutt, Levine, Hirsch, Segall & Northcutt, P.A., Tampa, for appellant.
Catherine M. Catlin, Langford, Hill, Trybus & Whalen, P.A., Tampa, for appellee.
PARKER, Judge.
Linda Zak (wife) appeals the trial court's final order of dissolution. We agree that the trial court erred by restricting the area of the children's residence, in establishing the child support obligations of Paul Zak (husband), and by failing to award the wife statutory interest on installment payments that she is to receive from the husband.
The Zaks were married while both were in medical school in Chicago. There are two children, born December 1990 and February 1992. The wife is a neonatologist, and the husband is an orthopedic surgeon. The wife completed her training before the couple moved to Brandon in order for the husband to complete a one-year fellowship. The wife *188 found employment in a private practice, while the husband completed his training.
The husband was dissatisfied with opportunities in Tampa and decided to accept a position for $150,000 a year in Orlando. Unable to find an acceptable position in Orlando, the wife started a solo practice which was very successful. The husband, again dissatisfied with his position, decided to start a private practice in St. Petersburg. The best position the wife could find in St. Petersburg was a part-time position at a children's hospital which paid $60,000 per year and offered no benefits other than malpractice insurance. The wife closed her Orlando practice and moved to St. Petersburg in November 1991.
The week after the birth of their second child in February 1992, the husband petitioned for dissolution of the marriage. The husband admitted that he had developed and maintained a relationship with another woman since May 1991. The husband, unsuccessful in his private practice, accepted a position with Florida Spine Institute in Pinellas County. At the time of the final hearing, the wife was earning $60,000 per year and the husband was earning $200,000 per year, soon to increase to $250,000.
The wife requested that the court allow her to move to Chicago with the children. Loyola Medical School had offered her a position which provided her with additional benefits including payment of dues and medical literature subscriptions, paid vacation, a pension plan, health insurance, and college tuition for the children. The position also included a study program to aid her in achieving board certification, and it offered her part-time work which would aid her in caring for the children. In Chicago the children would be near the husband's family who remain on good terms with the wife. Additionally, the wife would be closer to her family who live in Iowa. The wife testified that St. Petersburg offers only one Level III neonatology unit, whereas Chicago has over six such units which provide the wife with more opportunities. The husband sought to keep the children within the immediate area to prevent his visitation from being frustrated. Both parties called expert witnesses who testified regarding the best type of visitation that these very young children needed with their father.
The trial court's order of dissolution encompassed many issues. We conclude three of those findings were error. First, the trial court erred in restricting the children's residence to no farther than a two-hour drive from St. Petersburg until the youngest child reached age three. Both the supreme court, in Mize v. Mize, 621 So.2d 417 (Fla. 1993), and this court, in Lenders v. Durham, 564 So.2d 1186 (Fla. 2d DCA 1990), recognize a multi-factor test for deciding issues of residency. Those factors are:
1. Whether the move would be likely to improve the general quality of life for both the primary residential spouse and the children.
2. Whether the motive for seeking the move is for the express purpose of defeating visitation.
3. Whether the custodial parent, once out of the jurisdiction, will be likely to comply with any substitute visitation arrangements.
4. Whether the substitute visitation will be adequate to foster a continuing meaningful relationship between the child or children and the noncustodial parent.
5. Whether the cost of transportation is financially affordable by one or both of the parents.
6. Whether the move is in the best interest of the children.
Mize, 621 So.2d at 420. The only factor that the wife might not satisfy would be factor number four. However, upon remand the trial court can address adequately this factor in light of the substantial financial resources of the parties.
The second error that we address is the trial court's establishment of child support below the statutory guidelines. The trial court set the support obligation of the husband at $1,080.22 per month plus seventy-seven percent of the nanny expense up to $1000. At the time of the final hearing, the husband's portion of the nanny expense was $734.04, for a total support payment of $1,814.28. The trial court found that the monthly net income of the Zaks totaled $15,333.03 *189 and that the husband's share should be seventy-three percent.[1] However, the trial court set the husband's support obligation below the statutory guidelines schedule. The husband's percentage of support, pursuant to section 61.30(3), Florida Statutes (1991), should have been at least $1,993.87.[2] In these circumstances, the guidelines establish a minimum child support floor. See Sinclair v. Sinclair, 594 So.2d 807 (Fla. 3d DCA 1992); Torres v. Hunter, 592 So.2d 757 (Fla. 1st DCA 1992). Clearly the trial court erred in establishing the child support level for which the husband is responsible, and upon remand the trial court should not overlook that these parties' combined net income exceeds the statutory combined net income by eighty-two percent and that the supreme court has held that minor children have every right to share in the good fortune of their parents. Miller v. Schou, 616 So.2d 436, 437 (Fla. 1993).
The third area in which the trial court erred was permitting the husband to pay his one-half of the home expenses in $500 monthly installments at no interest. We conclude that it was an abuse of discretion not to provide that the unpaid balance would earn interest at the statutory rate. See Dept. of Health & Rehabilitative Services v. Behnke-Coolidge, 598 So.2d 293 (Fla. 2d DCA 1992).
We reverse and remand this case with directions to the trial court to strike the restriction on the children's residence, to revisit and establish the husband's child support obligation, and to award the wife interest at the statutory rate on the husband's court-ordered installment payments. Otherwise, the final order of dissolution is affirmed.
RYDER, A.C.J., and DANAHY, J., concur.
NOTES
[1] If the trial court had required payment of the 73% of that amount, the husband's share of support would have been $11,193 per month.
[2] The guidelines establish a support need of $1778 per month for two children at a combined net monthly income of $8400, which is the highest net income figure listed in Chapter 61. Child care expenses are added to this obligation per subsection (7). The court found that the Zak children's child care expenses came to $953.33 per month, for a total support need of $2,731.33. The father's 73% share comes to $1,993.87.