KARIN H. PEARSON *VS.* ANTHONY E. P. PEARSON.

No. 98-P-1672.

Essex. January 12, 2001. - July 27, 2001.

Present: ARMSTRONG, C.J., GREENBERG, & RAPOZA, JJ.

*Divorce and Separation,* Modification of judgment, Child support, Attorney's fees.

In a proceeding for modification of a child support order, there was sufficient evidence to support a Probate Court judge's decision increasing the total monthly child support payment that the former husband was to pay from $666 to $2,817, but in all other respects affirming a prior modified judgment, while considering inappropriate the former wife's principal demand for child support payments beyond the $2,817 monthly order and her additional demand that her former husband pay the children's educational expenses from his own funds, and not the Uniform Gift to Minors Act accounts that he had funded before and after the divorce. [158-160, 161-164]

Discussion of how some States considering the question of gross disparity of income have applied an "income-sharing" method that is designed to maintain the pre-divorce standard of living of children after an intact family splits into two households, and why a pure income-sharing approach was problematic in this case. [160-161]

In a proceeding for modification of a child support order, the judge did not err in awarding the former wife her attorney's fees; however, this court remanded the case for the limited purpose of reassessing the former wife's reasonable attorney's fees. [164-165]

COMPLAINT for divorce filed in the Essex Division of the Probate and Family Court Department on November 1, 1983.

A complaint for modification, filed on July 22, 1996, was heard by *Edward J. Rockett,* J.

*Allen C. B. Horsley* for Karin Pearson.

*William M. Levine (Marc J. Cooper* with him) for Anthony E.P. Pearson.

*Patricia A. Cantor & Maureen P. Hogan,* for Women's Bar Association, amicus curiae, submitted a brief.

GREENBERG, J. When the parties were divorced in 1985, their

separation agreement, which was incorporated but not merged into their divorce judgment, provided that the former husband was to pay alimony to the former wife in the amount of $1,000 per month and child support for two children in the amount of $666 per month. The former wife also received a lump sum property settlement in the amount of $475,000 that was placed into an irrevocable trust, a portion of which was used by her for the purchase of a new home. The agreement further provided that the former husband pay all reasonable college expenses for the children "to the extent not otherwise provided for by any amounts paid or payable to the Minor Child by the Husband, his family or any other source." The former wife, who was given physical custody of the children, was responsible for routine medical and dental expenses, while the former husband was to pay for the children's medical insurance as well as any extraordinary medical costs.

The parties continued to reside in Massachusetts until, in 1986, the former wife obtained employment in New York and sought the Probate Court's permission to move the children there. As a result, the parties executed a modification to their separation agreement. One of its new terms acknowledged the former wife's motive to take the children to New York to further her career goals. The agreement also provided that any increased living expenses for her or the children occasioned by the move would become her sole responsibility. The modification agreement also amended that part of the parties' 1985 agreement pertaining to the children's education, and stated that costs not otherwise paid by the former husband, family, or another source "shall be borne by the parents with reasonable contribution from each party given their relative financial circumstances." A modified judgment, incorporating but not merging the modified separation agreement, entered in 1987.

Unfortunately, the former wife's prospects for a more independent life in New York soured. Although she sold her house at a $300,000 profit, she lost $50,000 in one ill-advised investment and reduced her work hours to spend more time with the children, both of whom had developed emotional problems. In the meantime, the former husband's assets increased substantially. As a result, the former wife filed a

complaint for modification. After a trial in July, 1996, a judge of the Probate Court increased the total monthly child support payment that the former husband was to pay, from $666 to $2,817.[1] The new judgment also included a general order requiring that the former husband pay the former wife's attorney's fees in the amount of $115,652.07.

In all other respects, the judge affirmed the 1987 modified judgment. It is apparent from his underlying findings of fact and conclusions of law that the judge considered inappropriate the former wife's principal demand for child support payments beyond the $2,817 monthly order. He wrote that "any additional monies granted to the plaintiff, in excess of the [$2,817 monthly] child support order[,] would essentially be utilized as alimony for the plaintiff."[2]

The former wife has appealed, challenging the amount of child support as inadequate (including the judge's denial of her demand that her former husband pay the children's educational expenses from his own funds) and the judge's findings as contrary to the evidence and the law, and asserting that he failed to fashion an award consistent with the needs of the children and the resources of the parties. For his part, the former husband cross-appeals, but disputes only the judge's award of counsel fees to his former wife.

It is undisputed that the former husband's income derives primarily from inherited wealth placed in trust by his parents and other relatives. These assets have substantially increased in value over the ten years from the entry of the 1987 modified judgment to the November, 1997, trial on the complaint for

---

[1] The amount expressed in the newly modified judgment was $650 per week. We have stated a monthly amount for comparative purposes, by multiplying the weekly figure by fifty-two and dividing the result by twelve. We also note that this amount is exclusive of amounts to be paid by the husband for medical insurance and uninsured medical expenses.

[2] In addition to seeking increased child support, the former wife had sought to increase the husband's alimony obligations in a second amended complaint for modification. Before trial, however, the former wife dismissed this demand. The judge found that the alimony provisions of the agreement survived, and in a discovery ruling ordered that "there shall be no redistribution of the marital assets."

modification.[3] The former husband has the ability to pay greater sums for child support, should the law require him to do so. The former wife argues on appeal that the judge considered neither the former husband's existing assets nor his ability to control the amount of income he draws from the trusts established for his benefit. Because the former husband does not challenge the modification, we assume (without deciding) the standards for modification were met, and do not reach the question of how much deference should have been accorded to the parties' child support agreement. The narrow question before us is whether the judge erred with respect to the amount of child support ordered.

The statute governing support modification requires an analysis of both the changed circumstances of the parties and the best interests of the children. See G. L. c. 208, § 28. When setting an amount of support, judges are granted discretion to award sums beyond the guideline amount where, as here, one or both of the parents exceed certain income levels. See Massachusetts Child Support Guidelines II-C (effective January 1, 1994) (requiring noncustodial parent to pay a "minimum presumptive level of support" based on a $75,000 annual

---

[3] When the former husband turned eighteen, a trust was established by his parents to hold an inheritance for him. While "irrevocable," the trust reserves to him the right to amend, or to revoke, the trust in whole or in part, subject to approval by the two trustees, Citibank of New York and James Cherry, an attorney. As set forth in his financial statement of November 26, 1997, since 1984 the former husband has received annual distributions from the trust of $89,000, of which $20,000 annually has been paid directly by the trustees to satisfy his alimony and child support obligations. In addition, he received $32,907 annually as the sole income beneficiary of another family trust created by his late uncle. His children are the sole remainder beneficiaries of this trust. The rest of his $169,587 in gross annual income was from various sources, including distributions from his mother's estate. The primary trust set up by his parents increased in value by 350 per cent between 1984 and November, 1997, from $1,324,000 to $4,739,400. As of the trial, his assets consisted of $6,200,000 in cash and securities, about $508,000 in assessed value of unencumbered real estate, and $155,000 in assorted personal property, for total assets of not less than $6,850,000.

The trial judge, in his findings, noted that with the increased support payments, the financial resources of the wife and children totaled $104,388 on an annual basis.

income when his or her income exceeds that amount).[4] Where a noncustodial parent's income level exceeds the children's basic needs, the minimum amount provided in the guidelines is presumptively correct, and the court may deviate upwards in the amount warranted by the circumstances. See *J.C.* v. *E.M.*, 36 Mass. App. Ct. 446, 450 & n.6 (1994) (affirming support award meeting child's needs and exceeding what it would have been at $75,000 guideline level). See also *Quinn* v. *Quinn*, 49 Mass. App. Ct. 144, 148 (2000) (rebuttable presumption exists that child support guidelines are appropriate).

Some States considering the question of gross disparity of income have applied an "income-sharing" method that is designed to maintain the pre-divorce standard of living of the children after an intact family splits into two households. See *White* v. *Marciano*, 190 Cal. App. 3d 1026, 1031-1032 (1987); *Galbis* v. *Nadal*, 626 A.2d 26, 31 (D.C. 1993); *Zak* v. *Zak*, 629 So. 2d 187, 188-189 (Fla. Dist. Ct. App. 1993); *Boyt* v. *Romanow*, 664 So. 2d 995, 996-999 (Fla. Dist. Ct. App. 1995); *Pratt* v. *McCullough*, 100 Ohio App. 3d 479, 481-482 (1995); *Branch* v. *Jackson*, 427 Pa. Super. 417, 419-420 (1993).[5] In this case, a pure income-sharing approach is problematic because it does not account for the noncustodial parent whose income far exceeds any reasonable needs the child might have. See Baron, Comment, The Many Faces of Child Support Modification, 16 J. Am. Acad. Matrimonial Law. 259, 260 (1999). Courts have generally rejected pure income-sharing because this approach may constructively distribute the noncustodial parent's estate, provide a windfall to the child and custodial spouse, and infringe upon the noncustodial parent's right to direct the lifestyle of his or her children. See Morgan, Child Support and the Anomalous Cases of the High-Income and Low-Income Parent: The Need

[4]"These guidelines are not meant to apply where the combined gross income of the parties exceeds $100,000 or where the gross income of the non-custodial parent exceeds $75,000. In cases where income exceeds these limits, the court should consider the award of support at the $75,000/$100,000 level as a minimum presumptive level of support to be awarded. Additional amounts of child support may be awarded at the judge's discretion." Massachusetts Child Support Guidelines II-C (effective January 1, 1994).

[5]We acknowledge the helpful amicus brief of the Women's Bar Association, collecting these decisions.

to Reconsider What Constitutes "Support" in the American and Canadian Child Support Guideline Models, 13 Can. J. Fam. L. 161, 192-196 (1996) (collecting cases).[6] Most of our cases involving modification requests contemplate a deterioration in the economic situation of the more dependent spouse, such that the former spouse and children have become impoverished and may require public assistance. See *McCarthy* v. *McCarthy*, 36 Mass. App. Ct. 490, 493-494 (1994). See also G. L. c. 119A, § 1, as amended by St. 1987, c. 490, § 13 (noting the "public policy of the commonwealth that dependent children shall be maintained, as completely as possible, from the resources of their parents, thereby relieving or avoiding, at least in part, the burden borne by the citizens of the commonwealth").[7] Here, nothing in the record shows that the children lacked anything money can buy. For example, the former husband purchased the daughter a car, paid for the son's music camp tuition, and gave the children expensive gifts, as well as paid for them to travel abroad.

As to the former wife's doubtfully relevant claim that the children — ages twenty and seventeen at the time of the trial — were physically and emotionally abused by their father, the rec-

---

[6] Dubbed in literature the "Three Pony Rule" (i.e., no child needs three ponies), the doctrine has earned cachet. See Morgan, *supra* at 198 n.69. Cf. *Coleman* v. *Coleman*, 648 So. 2d 605, 606-607 (Ala. Civ. App. 1994) (upholding an award exceeding the statutory presumptive level where it correlated with the reasonable and necessary needs of the children); *Voishan* v. *Palma*, 327 Md. 318, 322-324 (1992) (upholding an award exceeding the statutory presumptive level where the court determined the reasonable needs of the child and then calculated each parent's proportionate share). Compare *In re Marriage of Upson*, 991 P.2d 341, 344-345 (Colo. Ct. App. 1999) (remanding for findings on the children's needs because the court could not deviate upwards from the statutory presumptive level solely on the basis of the parties' gross economic disparity).

[7] The only precedent cited by the former wife to support her income-sharing argument is *Redding* v. *Redding*, 398 Mass. 102, 110 (1986) ("children are entitled to adequate support and maintenance reasonably within the power of both parents to furnish it"). Here, the judge made extensive findings of fact and law supporting his determination of what constituted "adequate" support and maintenance for the children. While *Redding* stated in dictum that "[t]here is some ground for the view that the noncustodial parent's child support contribution might best be related to a percentage of his or her income so that the child may benefit from that parent's financial success," *id.* at 110 n.6, we are not convinced that any precedent in Massachusetts has actually applied this standard.

ord contains vividly contrasting versions of what happened and why. Doctor Paul R. Duffly, a psychologist appointed by the court with consent of the parties, found, based on interviews with the children, that postdivorce conflict between the parents has contributed to the children's deteriorating emotional states. In any event, adequate provisions exist under the agreement to cover the children's pre-emancipation needs for psychotherapy.[8] The judge found that, in addition to maintaining health insurance for both children, the father paid for their therapy and other uninsured health care expenses. No trust instrument or security is warranted. Contrast *Passemato* v. *Passemato*, 427 Mass. 52, 54-57 (1998). Furthermore, when the children reached the age of twenty-one, each received over $100,000 from trusts, described below, established by the former husband.

The judge was correct to reject the former wife's request that the children's educational expenses be paid from the defendant's personal funds, and not the Uniform Gift to Minors Act (UGMA) accounts that the former husband funded before and after the divorce. The former wife's argument, posited for the first time on appeal, that the former husband should also replenish funds already taken for this purpose from these trusts in the children's names, makes little sense. He established these vehicles (UGMA trusts) to make funds available to the children for tuition and related living costs for higher education. The former wife cites no case law to support her demand that he pay these expenses entirely out of his own personal funds. To be sure, college expenses may be a support obligation as regards a child under the age of twenty-three and domiciled with the parent upon whom the child is principally dependent. See G. L. c. 208, § 28. As we have observed, however, the parties' agreement adequately provides for the children's educational expenses to be met, and the former wife has not shown that the children's interests require something more.

---

[8]As to the former wife's argument that the support award fails to cover the children's (anticipated) post-emancipation therapy expenses, it appears that whatever remedy she might have in the future would be not by support modification under G. L. c. 208, § 28, but by way of the court's general equity powers under G. L. c. 215, §§ 3, 6, authorizing entry of orders for persons under guardianship. See *Feinberg* v. *Diamant*, 378 Mass. 131, 134 (1979) (an action in equity may require a financially able divorced parent to contribute to a mentally infirm adult child's support).

Although the relative economic circumstances of the parties, if we examine the figures set out in the judge's findings, have changed significantly, the judge fashioned an award that allowed the wife and children to continue to meet their reasonable expenses. The size of the trusts created for the children's benefit, coupled with the judge's findings concerning the former wife's refusal to work and the depletion of her finances, suggest that the judge was satisfied that his order — which nearly quadrupled the support payment — provided adequate financial resources for the children.[9] Even so, the former wife contends that the judge wrongly attributed income to her for work that she voluntarily eschewed to attend to her emotionally troubled children.[10] Our cases hold otherwise. See *Williams* v. *Massa*, 431 Mass. 619, 632 n.12 (2000) (a spouse's election to stay home "does not automatically entitle that party, in the absence

[9]While noting that the child support guidelines were inapplicable because the husband's annual income exceeded $75,000, the court based its determination on the minimum presumption for the $75,000 level, then in its discretion added approximately fifty per cent. The judge found that this amount was adequate to meet the children's increased reasonable expenses, and that anything more would represent an increase in the former wife's alimony.

The judge laid out his calculation as follows. He first noted that the former husband's annual income exceeded $75,000 and was therefore above the maximum range of the child support guidelines. He therefore set as a starting point, as required by the guidelines, a presumptive minimum amount of support for the $75,000 level. This amount was determined by multiplying the former husband's weekly income ($1,442) by 30 per cent (yielding $433 per week) and adding a discretionary 15 percent of the result (i.e., $64.95 per week) to account for the ages of the children (17 and 20), for a total of $497.95 per week. In arriving at the presumptive minimum support figure, the judge did not, as he might have done, reduce the amount by accounting for income attributable to the former wife ($699 per week, excluding $231 per week in alimony), see Child Support Guidelines II-H, or costs of medical insurance and uninsured medical expenses (including psychotherapy) paid by the former husband (an approximate $653 per week), see Child Support Guidelines II-G.

To the presumptive minimum, the judge in his discretion added another $152.05 (about 30 per cent of the $497.95 minimum) to arrive at the final figure of $650 weekly. It was at this point that the judge appears to have factored in the aforementioned income of the former wife and medical expenses paid by the former husband. The judge also made a finding, supported by the evidence, that the reasonable needs of the children did not exceed $325 per week.

[10]Although the former wife's actual earned annual income was $6,500 based on working one day per week, the judge attributed an additional $26,000

of credible evidence, to be credited with contributions to the home and child care").[11] See also *Canning* v. *Juskalian*, 33 Mass. App. Ct. 202, 206-207 (1992) (discussing principle that earning capacity of parent rather than actual income may be considered in determining child support orders); Child Support Guidelines II-H (allowing court to attribute potential as well as actual earnings to one or both parents).

Last, we turn to the former husband's cross appeal of the judge's award to the former wife of her attorney's fees. The former husband argues, and we agree, that the judge's $115,652.07 fee award was surprising given the judge's observation that part of the former wife's case was "unwarranted and without legal merit, and consequently should not be rewarded through the imposition of fees."[12] The judge's rationale in making the award was that the former wife "does not have the ability to pay, nor should she be responsible for her attorney's fees." This, in itself, does not justify the imposition of an award against the former husband. The former wife, however, did succeed in quadrupling the support obligation, and raised the novel issue whether Massachusetts courts must use an income-sharing rationale for modifying agreements fixing child support. Cf. *Baker* v. *Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (holding that purpose of sanctions is not to deter novel legal arguments or cases of first impression). While the negative effect of the parties' lawsuit on their children is regrettable, as is the former

in earning capacity based on her trial testimony that work was available to her on a full-time basis.

[11]The judge did not find credible the former wife's argument (echoed by the Women's Bar Association in its amicus brief) that she should be credited financially for her necessary decision to stay home with her psychologically fragile children. Further, during the period in question, the former wife took a trip to Ireland by herself for ten days, while her daughter traveled on her own to Australia for three weeks.

[12]The judge spared no ink in faulting the former wife and her attorneys for their inordinate expenditures and overly complex trial strategy. The judge found that the former wife was poorly advised by her attorneys, whose actions "were clearly adverse to the interests of [their] client." The judge also called the former wife's discovery strategy "a fishing expedition," and noted that her counsel fees exceeded the total amount of increased child support by over $60,000. The judge also found that the former wife's plea for child support, brought just before the children reached the age of emancipation, was a "deceptive attempt" to revise the binding alimony agreement.

wife's attempt to further complicate an already contentious support action by bootstrapping tort allegations against her ex-husband, we disagree that the former wife's attempt to increase what she believes to be her children's share of her former husband's wealth was entirely "unwarranted."

We defer to the judge's decision to award the former wife her attorney's fees but find fault with his method of calculation. The judge set the $115,652.07 award (reduced from the $162,571.57 the former wife sought) admitting that the calculation was done "without much thought and for simplicity's sake, as an amount equal to the fees of the defendant's attorney." While matching the opposing counsel's bill has a certain appeal, assessment of counsel fees requires an application of relevant factors. See, e.g., *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 325 (1993). We remand for the limited purpose of reassessing the former wife's reasonable attorney's fees.

As both parties have lost their appeals, and in the hopes of deterring them from further litigation, we deny their requests for counsel fees associated with this appeal.

For the reasons stated above, we affirm the portion of the judgment pertaining to child support and vacate so much of the judgment as sets at $115,652.07 the amount of the award of attorney's fees. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*