NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-519

CHRYSEIS O. FOX

vs.

PETER D. CLIFT.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Peter D. Clift (husband), the former spouse of Chryseis O. Fox (wife), initiated divorce proceedings in Louisiana shortly before the wife filed a complaint for divorce in Massachusetts. The husband did not object to the Massachusetts proceedings; instead, he chose to not file an appearance and refused to participate.[1]  The Louisiana court issued a judgment that dissolved the parties' marriage but did not address property division or alimony.  Thereafter, the wife's amended complaint seeking property division and alimony proceeded to a one-day

_____

[1] The husband did not participate in the proceedings below until February 2023, when his counsel filed a limited notice of appearance and a notice of appeal from the judgment at issue in this case.

trial in Massachusetts, which neither the husband nor his counsel attended. A judge of the Probate and Family Court issued a judgment in January 2023, awarding the wife approximately sixty-four percent of the marital estate, alimony equivalent to thirty-five percent of the difference between the parties' incomes, and $76,318.95 in attorney's fees. The husband appeals from the January 2023 judgment, claiming error in (1) the judge's failure to stay the Massachusetts proceedings sua sponte where the husband filed the Louisiana divorce action first; and (2) the overall financial award to the wife (property division, alimony, and attorney's fees), which he claims was inequitable, plainly wrong, and excessive. We affirm.

Background. We summarize the trial judge's relevant findings, supplementing them with undisputed facts in the record and reserving other facts for later discussion. See Pierce v. Pierce, 455 Mass. 286, 288 (2009). The parties were married in Texas in September 1994. In May 1995, they moved to Massachusetts after the husband, a "renowned geologist," accepted a job offer on Cape Cod. The parties purchased the marital home located in Falmouth in December 1995, which remained their primary marital residence until their separation

in 2021.[2]  In 2012, the husband accepted a teaching position at Louisiana State University (LSU).[3]  The parties purchased a second home in Louisiana where the husband resided while teaching; he returned to the Falmouth marital home to live with the wife during holidays, school breaks, and long weekends every four to six weeks.  While the husband was in Louisiana, he would send the wife "affectionate" correspondence, including as recently as February 2021.

In May 2021, the husband filed a petition for divorce in Louisiana (which was served on the wife on June 2, 2021).  On June 17, 2021, the wife filed a complaint for divorce in Massachusetts.  The wife disclosed the pending Louisiana divorce action in her complaint.  The husband was served with the wife's complaint in hand and apparently began the process of retaining an attorney in Massachusetts; however, he ultimately chose not to participate in the Massachusetts proceedings on the advice of his Louisiana divorce counsel.  On January 5, 2022, the

---

[2] They also purchased a second home in Cambridge in 1999; however, they sold it approximately five or six years later.  In 2004 or 2005, the parties temporarily lived together in Scotland while the husband worked in a research position at the University of Aberdeen.

[3] After the husband began teaching at LSU, he continued to receive mail at the Falmouth marital home and listed the Falmouth marital home as his address on credit applications.  He filed joint tax returns with the wife in Massachusetts, as a "part-year resident."

Louisiana Family Court issued a judgment of divorce (Louisiana divorce judgment) dissolving the parties' marriage. The Louisiana divorce judgment contained no provisions for property division or alimony.

On January 31, 2022, the wife filed an amended complaint in Massachusetts requesting alimony and equitable division of assets pursuant to G. L. c. 208, §§ 34, 48-55. Following a one-day trial in October 2022, the judge issued the January 2023 judgment providing, in relevant part, that (1) the husband shall pay alimony of $4,695 per month (which obligation shall not terminate on his attainment of full retirement age, instead continuing until either party's death or the wife's remarriage); (2) the wife shall receive approximately sixty-four percent of the marital estate assets, including the Falmouth property and between sixty to seventy percent of the husband's various retirement accounts; and (5) the husband shall pay the wife $76,318.95 as partial reimbursement for her attorney's fees and costs. The present appeal by the husband followed.

Discussion. 1. "First-filed" rule. The husband first contends that because he filed and served his Louisiana petition for divorce before the wife filed her complaint in Massachusetts, the judge erred in failing to stay, sua sponte,

4

the Massachusetts action.[4]  The husband asserts that by allowing

the two actions to proceed simultaneously, rather than staying

the Massachusetts action until the conclusion of the Louisiana

action, the judge erroneously failed to adhere to the "first-

filed rule."  We are not persuaded.

We agree with the wife that the husband has waived this

argument by failing to raise it in the trial court below.  By

his own admission, the husband made a tactical decision to

abstain from participating in the Massachusetts proceedings.

There was nothing preventing the husband from filing a limited

appearance for the purpose of requesting a stay; however, he did

not do so.  As the husband acknowledged in his brief and at oral

argument, the decision whether to grant a stay on the basis of

the first-filed rule is discretionary.[5]  See Exxon Mobil Corp. v.

Attorney Gen., 479 Mass. 312, 329 (2018), cert. denied, 139 S.

Ct. 794 (2019).  It is difficult to conceive how the judge here

---

[4] The husband has not challenged, either below or on appeal, the Probate and Family Court's personal jurisdiction or subject matter jurisdiction.  While the latter cannot be waived, see Commonwealth v. Nick N., 486 Mass. 696, 702 (2021), there is no question that the Probate and Family Court judge had subject matter jurisdiction to adjudicate the wife's requests for property division and alimony.  See G. L. c. 208, § 34; G. L. c. 215, §§ 3, 6.

[5] The similar doctrine of forum non conveniens also involves a discretionary decision whether to allow another forum to proceed.  See Joly v. Albert Larocque Lumber Ltd., 397 Mass. 43, 44 (1986).

5

could have abused discretion that she was never asked to exercise.  Cf. Commonwealth v. Giontzis, 47 Mass. App. Ct. 450, 460 (1999) (failure to grant continuance sua sponte not abuse of discretion "particularly since the defendant did not request such relief").  We do not ordinarily consider issues that have been raised for the first time on appeal, see Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006), and the husband has not demonstrated any reason why we should depart from that rule in this case.[6]  Accordingly, we discern no error in the

_____

[6] Although we need not decide the issue, we note that even if the husband had requested a stay of the proceedings below on the basis of the first-filed rule, there is nothing in the record that would have compelled the judge to grant such a request.  Indeed, the wife contends that the record contained support for application of "two widely recognized exceptions to the first-filed rule."  EMC Corp. v. Parallel Iron, LLC, 914 F.Supp.2d 125, 127 (D. Mass. 2012) (exceptions include [1] "special circumstances," such as first filer's misleading conduct to win race to courthouse, or [2] where "balance of convenience substantially favors" second-filed action [citation omitted]).  As found by the judge, the wife was "shocked" when she learned that the husband was seeking a divorce, as mere months earlier he had sent her flowers and a note for Valentine's Day stating that he looked forward to being "together again."  Approximately one week before she was served with his complaint, he sent an e-mail message informing her that he had withdrawn one-half of the balance in their joint checking account and asking her to perform a list of tasks to separate their finances.  The wife contends that those (and other) actions by the husband reflected his intent to engage in secret divorce planning while "string[ing] [her] along."  The wife also asserts that the balance of convenience mitigated in favor of continuing the Massachusetts action because she suffers from serious, debilitating medical issues; the husband is in a far superior financial position; and both parties have substantial contacts with Massachusetts.

6

judge's failure to stay, sua sponte, the Massachusetts proceeding.[7]

2. _Financial award_.  The husband next contends that the overall financial award to the wife (property division, alimony, and attorney's fees) was inequitable.  We disagree.

a. _Property division_.  The husband claims error in the judge's decision to award the wife nearly two-thirds of the marital estate, asserting that the disparate property division was inequitable in light of the parties' long-term, twenty-seven year marriage and the husband's equal (if not greater) contribution to the marital estate through his income and inheritances.  We disagree.

"Our review of a judgment pursuant to the equitable distribution statute, G. L. c. 208, § 34, proceeds under a two-step analysis.  'First, we examine the judge's findings to determine whether all relevant factors in § 34 were

---

[7] Although the initial Louisiana divorce judgment dissolving the parties' marriage did not address the issues of property division and alimony, a subsequent Louisiana judgment did address those issues, conflicting with the January 2023 Probate and Family Court judgment.  Following an appeal, the Louisiana appellate court ultimately ordered the lower court to give full faith and credit to the nonmodifiable aspects of the January 2023 judgment.  Accordingly, we are not aware of any Louisiana judgment that presently conflicts with the January 2023 judgment.

7

considered.'"[8] Adams v. Adams, 459 Mass. 361, 371 (2011), S.C.,

466 Mass. 1015 (2013), quoting Bowring v. Reid, 399 Mass. 265,

267 (1987). "The second tier of our review requires us to

determine whether the reasons for the judge's conclusions are

'apparent in [the judge's] findings and rulings.'" Adams,

supra, quoting Redding v. Redding, 398 Mass. 102, 108 (1986).

"A judge's determinations as to equitable distribution will not

be reversed unless 'plainly wrong and excessive.'" Adams,

supra, quoting Redding, supra at 107.

Here, the judge made thoughtful, detailed findings as to

all relevant § 34 factors. The judge's decision to assign a

larger portion of the marital estate to the wife was based

largely on her findings regarding the wife's "plethora of

serious medical issues"[9] that "profoundly impair her activities

of daily living," leaving her permanently disabled and unable to

---

[8] The judge is required to consider "the length of the
marriage, the conduct of the parties during the marriage, the
age, health, station, occupation, amount and sources of income,
vocational skills, employability, estate, liabilities and needs
of each of the parties, [and] the opportunity of each for future
acquisition of capital assets and income." G. L. c. 208, § 34.
The judge may also "consider the contribution of each of the
parties in the acquisition, preservation or appreciation in
value of their respective estates and the contribution of each
of the parties as a homemaker to the family unit." Id.

[9] The judge found that the wife's primary medical diagnosis
is Ehlers-Danlos Syndrome, which is a genetic connective tissue
disorder that affects every part of her body. She has over
forty medical providers and attends between 100 to 300 medical
appointments per year.

8

work; the husband's "robust financial prospects"; the husband's undisclosed assets outside of the United States; and the husband's harmful conduct during the marriage (including engaging in extramarital affairs and physically abusing the wife).

The husband acknowledges that the judge considered these factors but contends that she gave them too much weight while giving "minimal weight" to the length of the marriage and his contributions to the marital estate. The husband is, in essence, quarreling with the weight afforded to each of the G. L. c. 208, § 34 factors, which is a matter within the judge's sound discretion. Pierce, 455 Mass. at 296. We discern no abuse of discretion in the judge's weighing of the relevant § 34 factors here. See Thompson v. Thompson, 11 Mass. App. Ct. 911, 911 (1981) (affirming award to wife of two-thirds of parties' "only valuable asset" where wife's "employability [was] limited").

b. Alimony. The husband asserts that the judge erred in ordering him to pay alimony equivalent to thirty-five percent of the difference between the parties' incomes where alimony is no longer tax deductible as a result of the Federal Tax Cuts and

Jobs Act of 2017.[10] He acknowledges that the percentage is within the guidelines set forth in the Alimony Reform Act (act), G. L. c. 208, § 53 (b) ("alimony should generally not exceed the recipient's need or 30 to 35 per cent of the difference between the parties' gross incomes"). However, he contends that the judge should have taken judicial notice of the fact that the act's percentage guidelines went into effect in 2012, when alimony was still tax deductible to the payor (and treated as taxable income to the recipient) for Federal tax purposes.

The wife asserts, and we agree, that this argument is waived because the husband failed to raise the issue of tax consequences below. See Fechtor v. Fechtor, 26 Mass. App. Ct. 859, 866 (1989) (judge not required to "grapple" with tax consequences where parties do not request it). However, even if the husband had properly raised it below (which we do not suggest), we would discern no error, as § 53 (b) of the act expressly provides that alimony should not exceed the recipient's need or thirty-five percent of the difference between the parties' incomes. Here, the judge found that the

---

[10] The husband also takes issue with the fact that the alimony award does not terminate on his attainment of full retirement age; however, the assertions in his brief regarding that issue are conclusory and do not rise to the level of reasoned appellate argument contemplated by Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019). Accordingly, we do not consider them. See K.A. v. T.R., 86 Mass. App. Ct. 554, 567 (2014).

10

wife has a shortfall of at least $2,126.80 per week (after deducting her expenses from her gross weekly income of $633.61). The amount of alimony awarded -- $1,083.46 per week ($4,695 per month) -- does not cover that shortfall, let alone enable the wife to maintain the upper middle-class lifestyle enjoyed by the parties during the marriage.[11]  See Young v. Young, 478 Mass. 1, 6 (2017) ("the recipient spouse's need for support is generally the amount needed to allow that spouse to maintain the lifestyle . . . she enjoyed prior to termination of the marriage" [citation omitted]).  As the alimony award exceeds neither the wife's need, nor the percentage guidelines set forth in § 53 (b), we discern no error in the amount of the award.

c.  Attorney's fees.  Finally, the husband claims that the judge abused her discretion in ordering him to reimburse the wife for a portion of her attorney's fees because he did not participate in the Massachusetts action, as the wife would have incurred attorney's fees regardless of where the action was litigated and the amount was excessive given that the case was

---

[11] The judge found that the husband's lifestyle has not diminished since the parties' divorce, and it can therefore be inferred that he has the ability to pay the amount of alimony awarded based on his ability to maintain the marital lifestyle and his income of at least $192,000 per year.  Because the husband did not file a financial statement, it is unclear what his weekly expenses were at the time of trial.

resolved with a one-day trial in which the husband did not participate. We disagree.

Here, the judge found that the husband's "egregious conduct" -- which included, among other things, refusing to pay temporary alimony ordered by the judge during the pendency of the Massachusetts proceedings, and failing to file mandatory financial statements -- caused the wife to unnecessarily incur "substantial attorney's fees and litigation expense[s]." The judge was permitted to award fees based on the husband's conduct. See Schechter v. Schechter, 88 Mass. App. Ct. 239, 260 (2015). The judge was also permitted to, and did, award fees pursuant to G. L. c. 208, § 38, which authorizes judges to award fees irrespective of the payor's behavior. See Hager v. Hager, 12 Mass. App. Ct. 887, 888 (1981). Where, as here, "the judge was intimately familiar with the parties, the [husband's] superior financial position, the nature of the case, and the submissions of the parties"; the judge "made specific findings that the [husband] needlessly complicated the [wife's] efforts to discover the facts and severely and unnecessarily increased the amount of work performed by the [wife]'s attorney"; and "[a]t no time throughout the course of the proceedings below did the [husband] request a hearing on the matter of attorney's

12

fees," we conclude the judge properly exercised her discretion to award fees to the wife.  Schechter, supra.[12]

                              Judgment dated January 3,
                                2023, affirmed.

                              By the Court (Green, C.J.[13],
                                Walsh & Smyth, JJ.[14]),

                              *Paul Little*

                              Clerk


Entered:  September 30, 2024.

---

[12] The wife's request for appellate fees and costs pursuant to Mass. R. A. P. 25, as appearing in 481 Mass. 1654 (2019), is allowed.  The wife shall file a verified and itemized application for such fees and costs within fourteen days of the date of this decision, and the husband will have fourteen days thereafter in which to file any opposition to the amounts requested.  See Fabre v. Walton, 441 Mass. 9, 10-11 (2004).  The husband's request for appellate fees is denied.

[13] Chief Justice Green participated in the deliberation on this case prior to his retirement.

[14] The panelists are listed in order of seniority.

13