## Sharon O. Brower *vs.* Frank C. Brower.

No. 02-P-1227.

Franklin. January 12, 2004. - May 21, 2004.

Present: Duffly, Kantrowitz, & Kafker, JJ.

*Divorce and Separation,* Pension benefits. *Pension.*

In a divorce action, the judge did not abuse his discretion in allowing the wife's motion for entry of a qualified domestic relations order that would permit the wife, as alternate payee, to receive a percentage of the husband's public pension upon his retirement based upon a calculation using his future compensation and years of continued public employment accrued after the date of the divorce judgment. [218-222]

Complaint for divorce filed in the Franklin Division of the Probate and Family Court Department on September 25, 1996.

A motion for clarification of the judgment of divorce nisi and a motion for entry of a domestic relations order were heard by *Geoffrey A. Wilson,* J.

*Jack D. Curtiss* for Frank C. Brower.

*Wendy H. Sibbison* for Sharon O. Brower.

Kantrowitz, J. May a percentage of the husband's future pension benefits, based on the husband's earnings after the period of marriage, be included in the marital estate? We hold that, in the circumstances of this case, it may.

The husband appeals from (1) the denial of his motion for clarification of that part of the judgment of divorce nisi dividing his public pension; and (2) the allowance of the former wife's motion for entry of a qualified domestic relations order. More specifically, the husband argues the judge erred in approving a domestic relations order that followed a sample order issued by the Massachusetts Teachers' Retirement Board whereby the wife, as alternate payee, is to receive a percentage of his public pension upon his retirement based upon a calculation using his future compensation and years of continued public employment accrued *after* the date of the divorce judgment.

*Background.* The parties were married on July 8, 1973, and, after twenty-six years of marriage, the plaintiff, Sharon O. Brower, divorced her husband, Frank C. Brower. The judgment of divorce nisi entered on July 8, 1999. At the time of trial, the husband was fifty years old and had been employed as a public school teacher for over twenty-two years.[1] His Massachusetts teacher's retirement pension was the principal marital asset. In dividing the pension benefits, the judge ordered that "[t]he Wife shall receive an irrevocable survivor beneficiary interest in and to 37.5% of the Husband's Massachusetts Teacher's Retirement benefit which had accrued as of July 8, 1999, commencing at the time of the Husband's retirement." Neither party appealed from the judgment.

In May, 2000, the wife, pursuant to the judgment, submitted a qualified domestic relations order to the court.[2] The husband thereafter filed a motion for clarification with regard to the division of his pension benefits. His motion was denied and the court approved the domestic relations order. On appeal, he argues that the order is in contravention of a 1990 amendment to G. L. c. 208, § 34, which, he argues, limited the marital estate to assets "accrued during the marriage."[3] He claims error in that the order calls for the use of the average of his three

---

[1]A pension valuation in the record states that "it appears" that the husband's employment in the public school system began "on or about 10/14/1971," but that he "appears to have left or taken a leave of absence, since he was reinstated effective 9/1/1976." The trial judge found that the husband had been employed as a public school teacher for between twenty-two and twenty-seven years.

[2]The order, as adopted by the trial judge, provided in paragraph 5:

"The Alternate Payee's Benefit shall be equal to thirty-seven and one-half percent (37.5%) of the marital portion of the Participant's benefit commencing at the time of the Participant's actual retirement. The marital portion of the Participant's benefit is the benefit the Participant would have received at his actual retirement date in the absence of this Order, determined using his highest consecutive three-year average salary at his actual retirement date, and using the benefit percentage specified in the Retirement Plan for the age at which the Participant actually retires and commences receiving his benefit, but using only his credited service under the Retirement Plan through July 8, 1999."

[3]General Laws c. 208, § 34, as amended through St. 1990, c. 467, reads, in pertinent part: "Upon divorce or upon a complaint in an action brought at any time after a divorce . . . the court may assign to either husband or wife all or any part of the estate of the other, including but not limited to, all vested and

highest consecutive yearly salaries as of his actual retirement
date, rather than as of the date of divorce, in determining the
marital portion of the benefit. This, he claims, includes in the
marital estate retirement benefits that will accrue after the mar-
riage ended.

*Discussion.* We are guided by *Moriarty* v. *Stone*, 41 Mass.
App. Ct. 151 (1996), where a similar argument was made
concerning assets accrued prior to the marriage. "It is appar-
ently the husband's position that the 1990 amendment evinces
an intent on the part of the Legislature to exclude retirement-
related benefits accrued prior to the marriage from the estate to
be divided under § 34." *Id.* at 156 n.4. We disagreed and held
that the statutory phrase "accrued during the marriage" did not
prohibit a judge from including within the assignable estate that
part of a spouse's pension or retirement benefits that accrued
*prior* to the marriage.[4] We see no reason why that analysis can-
not be applied to the similar postmarriage assets at issue here.[5]
*Baccanti* v. *Morton*, 434 Mass. 787 (2001), buttresses our view.
There the court addressed the related issue of the division of
stock options. "The trial judge has discretion under G. L. c. 208,
§ 34, to decide whether an asset should be included in the
marital estate based on the parties' joint efforts in acquiring that

_____

nonvested benefits, rights and funds *accrued during the marriage* and which
shall include, but not be limited to, retirement benefits, military retirement
benefits if qualified under and to the extent provided by federal law, pension,
profit-sharing, annuity, deferred compensation and insurance" (emphasis
added).

[4]"The 1990 amendment left unchanged the language 'all or any part of the
estate of the other.' The term 'estate' has traditionally encompassed all property
to which a party holds title, whenever and however acquired, and includes
property obtained by a party before marriage. . . . We do not think that, by
amending § 34 to specify *certain types* of property included therein, the
Legislature intended to alter the long-established definition of the 'marital
estate' subject to division." *Moriarty* v. *Stone*, 41 Mass. Ct. at 156-157.

[5]Our decision is not contrary to *Kuban* v. *Kuban*, 48 Mass. App. Ct. 387
(1999), or *Daugherty* v. *Daugherty*, 50 Mass. App. Ct. 738 (2001). In those
cases we held that an employer's postmarriage contributions to an employee
spouse's annuity fund (*Kuban*) or profit sharing fund (*Daugherty*) were after-
acquired assets and not subject to division. Here, we are concerned only with
the narrow issue of postmarriage salary enhancements used in calculating the
nonemployee spouse's interest in the pension where a present valuation and
distribution of the pension benefit is not feasible or equitable.

asset and should not necessarily be confined by the period of the marriage."[6] *Id.* at 799.

Here, the judge was faced with a difficult determination. The actual value of the pension (which, as we have said, was the primary marital asset) depended on a number of variables that could not be determined in advance. The husband could retire in a day, a year, or a decade. He might remarry or die before reaching retirement. Given the present financial circumstances of the parties, a buy-out, while preferable, was not practical. See *Early* v. *Early*, 413 Mass. 720, 726 (1992). Left with deciding whether, for purposes of asset distribution, the retirement benefit should be calculated at the time of the dissolution of the marriage[7] or at the time of retirement,[8] the judge's findings of

---

[6]"[I]n those cases in which the division of [stock] options is contested, in order to determine whether and to what extent stock options may be included in the marital estate, the judge must determine if the options were given for efforts expended before, during, or after the marriage." *Baccanti* v. *Morton*, 434 Mass. at 799. "If the options were given for efforts expended before or during the marriage, they are part of the marital estate. . . . If, however, the options were given for efforts to be expended after the marriage, in order to include them in the marital estate, the judge must determine whether the options were nonetheless given for efforts attributable to the marital partnership." *Id.* at 799 n.7.

[7]Calculating the value of the pension as of the date of divorce, called the "bright line" rule, "likens post-divorce pension enhancements to post-divorce earnings and characterizes all such increases as the separate property of the employee spouse." *In re Marriage of Hunt*, 909 P.2d 525, 532 (Colo. 1995). Such a rule has been approved in *Shill* v. *Shill*, 115 Idaho 115 (1988); *Armstrong* v. *Armstrong*, 34 S.W.3d 83 (Ky. Ct. App. 2001); *Madrid* v. *Madrid*, 101 N.M. 504 (N.M. Ct. App. 1984); *In re Marriage of Rogers*, 45 Or. App. 885 (1980); *Berrington* v. *Berrington*, 534 Pa. 393 (1993); *Berry* v. *Berry*, 647 S.W.2d 945 (Tex. 1983).

[8]This approach, sometimes referred to as the "time rule" formula, incorporates the distribution of postmarital pension enhancements and "recognizes that post-divorce pension benefit enhancements defy easy categorization. Typically, there is commingling of effort undertaken during the marriage and after the marriage which together enhance the value of the future benefit. The employee spouse's ability to enhance the future benefit after the marriage frequently builds on foundation work and efforts undertaken during the marriage. Hence, the theory underlying the 'time rule' formula is called the 'marital foundation' theory." *Hunt*, 909 P.2d at 534. See *Baccanti* v. *Morton*, 434 Mass. at 801; *Dewan* v. *Dewan*, 17 Mass. App. Ct. 97, 101 (1983), *S.C.*, 399 Mass. 754 (1987); Brandt, Valuation, Allocation, and

fact indicate that he chose the latter.[9] We cannot say this was improper.

"[I]n consideration of the one spouse [for]going the present enjoyment of the benefits, he or she will share in any increase in benefits that continued employment will produce, including increase in pension benefits and salary." *In re Marriage of Hunt*, 909 P.2d 525, 537 (Colo. 1995), quoting from *Koelsch* v. *Koelsch*, 148 Ariz. 176, 179 (1986), quoting from *Koelsch* v. *Koelsch*, 148 Ariz. 187, 191 (Ct. App. 1984). "[A] nonemployee spouse should be compensated for risk of forfeiture,

Distribution of Retirement Plans at Divorce: Where are We?, 35 Fam. L.Q. 469, 472-473 (2001).

As described in *Hunt*, 909 P.2d at 531, "The 'time rule' formula includes a marital fraction, sometimes referred to as a 'coverture fraction,' which determines the marital interest in the pensions." See *Dewan*, 17 Mass. App. Ct. at 101. The time rule formula has been approved in *In re Marriage of Lehman*, 18 Cal. 4th 169 (1998); *Hunt, supra*; *Stouffer* v. *Stouffer*, 10 Haw. App. 267 (1994); *Hendricks* v. *Hendricks*, 784 N.E.2d 1024 (Ind. Ct. App. 2003); *In re Marriage of Benson*, 545 N.W.2d 252 (Iowa 1996); *Warner* v. *Warner*, 651 So. 2d 1339 (La. 1995); *Lynch* v. *Lynch*, 665 S.W.2d 20 (Mo. Ct. App. 1983); *Rolfe* v. *Rolfe*, 234 Mont. 294 (1988); *Gemma* v. *Gemma*, 105 Nev. 458 (1989); *Risoldi* v. *Risoldi*, 320 N.J. Super. 524 (1999); *Berry* v. *Meadows*, 103 N.M. 761 (Ct. App. 1986); *Olivo* v. *Olivo*, 82 N.Y.2d 202 (1993); *Welder* v. *Welder*, 520 N.W.2d 813 (N.D. 1994); *Woodward* v. *Woodward*, 656 P.2d 431 (Utah 1982); *Bulicek* v. *Bulicek*, 59 Wash. App. 630 (1990).

[9]The findings of fact and conclusions of law, in pertinent part, provided:

"The Domestic Relations Order entered in this case follows a sample order issued by the Massachusetts Teachers' Retirement Board . . . based upon the holding of the Supreme Judicial Court in *Contributory Retirement Board of Arlington* v. *Mangiacotti*, 406 Mass. 184 (1989), and upon the formula set forth in *Dewan* v. *Dewan*, 17 Mass. App. Ct. 97 (1983), for calculating the marital benefit when division occurs at retirement:

" '[T]he award is typically a percentage . . . of that portion of the pension benefits attributable to the period of the marriage. The portion attributable to the period of the marriage is generally determined by multiplying the net pension benefit by a fraction [often called the "coverture fraction"], the numerator of which is the time period during which retirement benefits were accrued during the marriage and the denominator of which is the total period of accrual.' [*Dewan, supra*] at 101.

"The actuarial formula used in paragraph 5 of the Domestic Relations Order executed by the Court in this instance reflects this model *by allowing the full benefit to accumulate until, and be calculated as of, the date of the Husband's retirement*, at which point this sum is apportioned relative to the date of divorce" (emphasis added).

delay in receipt, and lack of control over the timing of receipt of benefits." *Hunt, supra* at 537.

"Under G. L. c. 208, § 34, judges possess broad discretion to divide marital property equitably. . . . In reviewing a judgment pursuant to § 34, we look for express findings confirming that all relevant factors in § 34 were considered by the judge. . . . We also determine whether the reasons for the judge's conclusions are apparent in his findings and rulings. . . . We will not reverse the judge's conclusion unless it is 'plainly wrong and excessive.' " *Dalessio* v. *Dalessio*, 409 Mass. 821, 830 (1991), *S.C.*, 413 Mass. 1007 (1992), quoting from *Redding* v. *Redding*, 398 Mass. 102, 107 (1986).

In our ever complex times, various assets, e.g., pensions, stock options, bonuses, and contingencies, are difficult to categorize and value.[10] Each case, each asset, is different and a "one size fits all" rule is both impractical and potentially unfair. In this case, it appears from the judge's findings (see note 9, *supra*) and the domestic relations order (see note 2, *supra*) that he exercised his discretion and attempted to devise a fair resolution to a difficult issue by calculating the full value of the husband's pension as of his actual retirement date, but assigning to the wife 37.5 percent of an amount representing only the number of years of covered employment up through the date of the divorce.[11,12] An equally

---

[10]For example, "[p]ension plans come in many complex varieties and forms, including vested or unvested pensions, matured or unmatured pensions, defined benefit or defined contribution pensions, contributory or noncontributory pensions, etc." *Hunt*, 909 P.2d at 529-530.

[11]Under G. L. c. 32, § 5, which governs the husband's pension, his annual retirement allowance is determined by multiplying three variables: (1) years of creditable service; (2) a percent (which increases with age, from a low of 1.5 percent at age fifty-five to a high of 2.5 percent at age sixty-five); and (3) the highest consecutive three-year average salary earned. In determining the wife's share, the judge altered the first factor by substituting for the total years of creditable service the number of years of service through the date of divorce; he left the other two elements unchanged. The husband argues that the wife's share should be further limited by factoring into the third element only his earnings as of the date of divorce.

[12]While the judge purported to follow *Dewan*, 17 Mass. App. Ct. at 101, see note 9, *supra*, his methodology deviated in one respect from the *Dewan* formulation and the "time rule" formula (see note 8, *supra*): typically, the nonemployee spouse is credited only with the number of years of marriage during which the employee spouse was employed. Here, the judge did not

wise judge in another case might appropriately decide that the total pension benefit should be frozen as of the date of the divorce, as opposed to using the husband's highest consecutive three-year average salary at his actual retirement date.[13] The discretion of the judge will be upheld "unless it is 'plainly wrong and excessive.' " *Dalessio* v. *Dalessio*, 409 Mass. at 830, quoting from *Redding* v. *Redding*, 398 Mass. at 107.[14],[15]

*Judgment affirmed.*

---

limit the number of years of employment in the first element of the formula (see note 11, *supra*) to the couple's twenty-six years of marriage. (See note 2, *supra*, assigning the husband's "credited service under the Retirement Plan through July 8, 1999," to the first element of the three-part formula.) Thus, nearly two years of the husband's employment prior to the marriage (October 14, 1971, to July 8, 1973, but see note 1, *supra*), was not excluded by the judge. In this case, the number of years of employment prior to the marriage is relatively small compared to the total number of years of marriage. In other cases, the number of years employed prior to the marriage could be more significant. The husband here does not appeal from that aspect of the order, and we address it no further.

[13]See, e.g., *Daugherty* v. *Daugherty*, 50 Mass. App. Ct. at 740-741, wherein the parties disagreed as to the date a profit sharing fund should have been valued — the date of the separation, divorce, or property division trial. The court quoted *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 370 n.9 (1985), stating that "[w]e intend no suggestion of a rule fixing any of [the dates when marital property is identified], or excluding some earlier time in appropriate circumstances, e.g., the date of the separation of the parties, as determinative in identifying divisible property. We think the development of the law in this respect is best left to a case-by-case analysis." *Daugherty* v. *Daugherty*, *supra.*

[14]We thus are not adhering solely to the use of one formula over another. See, e.g., *Koelsch* v. *Koelsch*, 148 Ariz. 176, 182-183 (1986); *Cooper* v. *Cooper*, 167 Ariz. 482, 488-490 (Ct. App. 1990). The ultimate consideration is fairness; whichever formula accomplishes that goal in a particular case is the formula that is preferable.

[15]The wife's request for appellate attorney's fees is denied. The request contains no information as to the financial circumstances of the wife. That the lower court awarded fees to the wife in the amount of $3,800 to defend her interests against the husband's appeal does not compel a similar result here.