## DEANNE E. CASEY *vs.* MICHAEL S. CASEY.

No. 10-P-643.

Middlesex. November 4, 2010. - June 7, 2011.

Present: COHEN, MILLS, & HANLON, JJ.

*Divorce and Separation,* Division of property, Pension benefits, Child support, Attorney's fees. *Pension. Practice, Civil,* Attorney's fees.

This court vacated the financial award in a divorce action, where, viewed as a whole, the award to the wife was inequitable, given that the probate judge treated the husband's military pension as a stream of income rather than a marital asset subject to division, awarded no alimony, and inappropriately attributed income to the wife based on a finding that she was able to work full time, in that her part-time employment was not voluntary and there was no evidence that she would be able to work more hours at her job or that other jobs were available in the same geographic area [627-632]; further, this court vacated the child support award, given the possible effect on the award of the classification of the husband's military pension as an asset, rather than a stream of income; where the judge erred in attributing income to the wife; where the husband failed to include his veterans' disability benefits in his financial statement; and where the judge erred in basing the award on a presumption that the child spent one-third of her time with the husband [632-635].

In an appeal from the judgment in a divorce action, this court declined to award appellate attorney's fees. [635]

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on September 5, 2007.

The case was heard by *Peter C. DiGangi*, J.

*Jacqueline Y. Parker* for Deanne E. Casey.

*Joyce G. Perocchi* for Michael S. Casey.

HANLON, J. The primary issue before us is whether, on the facts of this case, the husband's military retirement pay should have been treated as a marital asset subject to division. The wife appeals from a February, 2009, judgment of divorce, arguing that the judge erred in treating the husband's military pension as income, and that the judge's findings of fact related to property division and child support were not supported by the

evidence. We affirm in part and reverse in part, remanding for further proceedings in the Probate and Family Court.

*Facts.*[1] The judge characterized this as a long-term marriage; the parties were married in Hawaii in August, 1990, and last lived together in Florida in January, 2007. They have one daughter, who was born in July, 1993. At the time of the trial in 2009, the husband was fifty-one and the wife was forty-five.

The husband enlisted in the United States Air Force Reserve Officers' Training Corps in 1978 and was commissioned as an officer in 1980. In 2000, after a lengthy career flying fighter aircraft in the United States Air Force, he retired from military service with a rank of lieutenant colonel. He is currently employed full time as a defense contractor. Because of the husband's career, the family moved four times in ten years, with posts in the United States and Europe, including time in Germany, where the husband served on the staff of the North Atlantic Treaty Organization at Ramstein Air Base. During the summer of 2006, the parties moved from Massachusetts to the marital home in Niceville, Florida.

Throughout the marriage, the parties enjoyed a middle-class lifestyle. The wife has a bachelor's degree in nursing and has taken some courses toward a master's degree. During the marriage, she served as the primary caregiver for the daughter and the primary homemaker. Although the husband traveled extensively for work,[2] he did contribute to the "maintenance and operation of the household" when he was home and also handled all of the parties' finances.

The judge found that the parties' daughter, who was fifteen at the time of the trial, was in good health and had a loving relationship with both parents.[3] At the time of the trial, she resided with her mother in Massachusetts, attending high school, but she communicated with her father "via email, telephone and a web camera."

---

[1] "[W]e accept the judge's findings of fact as true unless they are clearly erroneous." *Whelan* v. *Whelan*, 74 Mass. App. Ct. 616, 619 (2009), quoting from *Millennium Equity Holdings, LLC* v. *Mahlowitz*, 73 Mass. App. Ct. 29, 36 (2008), *S.C.*, 456 Mass. 627 (2010).

[2] Because of his deployments, the husband was sometimes absent for as long as six months at a time.

[3] The judge did not credit the wife's testimony that the husband abused alcohol during the marriage or yelled at or frightened their daughter.

The wife worked full time before the daughter was born and part time at other points in the marriage, but she did not work while the parties lived abroad in Germany and England. The husband worked full time throughout the marriage and deposited his income in the parties' joint bank account. The judge found that "both parties made monetary contributions to the family unit throughout the marriage." The parties did not accrue substantial debt during the marriage and had limited liabilities after the divorce.

The parties' primary asset, other than the husband's military pension, was the marital home in Niceville, Florida, which they purchased in July, 2006, for $615,000. At the time of the divorce, the husband was living in the home,[4] while the wife and daughter were living in a rented two-bedroom townhouse in a Massachusetts suburb. The parties agreed as to the division of the proceeds from the sale of the marital home,[5] and the rest of their financial holdings, apart from the husband's military pension, were divided equally by stipulation.[6]

At the time of trial, the wife was working twenty-eight hours per week as a nurse coordinator, and her net weekly income, not including the temporary child support order, was $695.07.[7] "In light of Wife's age, the minor child's age, Wife's experience, field of expertise and credentials, as well as her current work schedule, . . . [the judge found] that Wife is capable of

---

[4]The house listing at the time the house was placed on the market described the marital home as a "perfectly sited and beautifully maintained custom 'Florida' home built on 1.5 lots." The house was described as having thirteen rooms, including three bedrooms, an office, exercise room, media room, sunroom, and a screened porch with a hot tub. The third bathroom "serve[d] also as the pool bath" for the swimming pool.

[5]By letter dated November 9, 2010, pursuant to Mass.R.A.P. 16(l), as amended, 386 Mass. 1247 (1982), counsel for the wife informed this court that the marital home in Florida had been sold for $460,000; after the mortgage and costs were paid, the husband received $100,131.71 and the wife received $97,210.61 from the proceeds of the sale.

[6]"The parties stipulated to an equal division of the[ir] retirement and stock accounts . . . [whereby] each party [would] acquire approximately [$119,275] in retirement assets." Those retirement and stock accounts included individual retirement accounts and 401(k) accounts from both the husband and the wife.

[7]Until September of 2008, the wife was working thirty-five hours per week, but her employer decreased her hours to twenty-eight hours per week; the wife occasionally works additional hours on Fridays for which she is not paid.

working a 40-hour week as a nurse, and, as such, [found] her potential earning capacity to be" approximately $868 per week.

At the time of the trial, the husband was employed full time as a defense contractor; his net income was $2,496.72 per week, not including the deduction for temporary child support. His net income included $867 per week in military pension and $29 per week in veteran's disability pay. Although the husband travels extensively for work, and receives large reimbursement checks for lodging, flights, rental cars, and other travel expenses, along with a per diem allowance for food, the judge concluded that those payments should not be considered income.

*Trial.* After a two-day divorce trial, hearing evidence from the husband, the wife, and a certified public accountant, the judge found the contested issues to be the custody of the minor child, the characterization of the husband's military pension, alimony, and the sale of the marital home. As noted, the marital home has been sold and the proceeds divided; no appellate issues remain as to the sale. The custody judgment is also unchallenged.[8] The most significant issue at trial was treatment of the husband's military pension, in pay status at the time of the divorce: the wife argued that the pension should be treated as a marital asset, subject to equitable distribution; the husband argued that it was a stream of income. Citing *Andrews* v. *Andrews*, 27 Mass. App. Ct. 759, 761 (1989), and the factors under G. L. c. 208, § 34, the judge concluded that it was more appropriate to treat the pension as income. He noted that treating the pension as a source of income entitled the wife to a greater child support award and could be taken into consideration should the wife seek a modification to provide alimony.[9]

After considering the Massachusetts Child Support Guidelines and the parties' incomes and expenses, the judge ordered the husband to pay $589 in weekly child support until the child's

[8]The judge awarded joint legal custody, with physical custody to the wife; shared physical custody was not practical because the parties live a considerable distance from one another and the husband travels significantly for work.

[9]In the judge's view, the wife had sufficient income to meet her expenses and maintain a standard of living equivalent to that enjoyed during the marriage; thus no alimony was awarded. He did indicate that he would entertain a complaint for modification on the issue of alimony in the future, particularly after the termination of the child support payments.

emancipation. With the child support order, the wife's net weekly income, as augmented by attributed income, increased to $1,457 and the husband's net weekly income decreased to $1,907.72.[10]

*Discussion.* 1. *Military pension.* At the heart of the parties' dispute is the question whether the husband's military pension should be treated as a stream of income or as a marital asset subject to equitable distribution. The stream of income would provide the wife with an interest subject to modification; the distribution of a marital asset would provide her with a fixed interest. See *Andrews* v. *Andrews*, 27 Mass. App. Ct. 759, 761 (1989). The judge treated the pension as a stream of income, and the husband argues that decision is a finding of fact that we must uphold unless clearly erroneous. *Whelan* v. *Whelan*, 74 Mass. App. Ct. 614, 619 (2009). "Although we will not substitute our judgment for that of the probate judge, we will 'scrutinize without deference the propriety of the legal criteria employed by the trial judge and the manner in which those criteria were applied to the facts.' " *Id.* at 620, quoting from *Kelley* v. *Kelley*, 64 Mass. App. Ct. 733, 739 (2005).

a. *Background.* In *McCarty* v. *McCarty*, 453 U.S. 210, 224-227 (1981), the United States Supreme Court held that Congress, when it provided for military retirement pay in 10 U.S.C. § 2771, specifically intended that the pay reach the former serviceman as a "personal entitlement." Thus, "California's

[10]The judge found that the husband had a significantly lower disposable income, $74 per week, contrasted with the wife's $432 per week, because he was paying all the expenses, including the mortgage and utilities, for the marital home. The judge concluded that, once the marital home was sold, the husband's expenses would go down and he would have a weekly disposable income of $573. We note that the husband's financial statement listing "Weekly Expenses Not Deducted From Pay" includes substantial amounts for expenses not connected with maintaining the marital home, including $100 per week for entertainment, $100 per week for vacation, $155 per week for motor vehicle fuel and maintenance expenses, and $100 per week for food, despite the fact that he testified that he traveled and received a per diem and other reimbursements for approximately two weeks per month. By contrast, the wife's financial statement includes, as expenses (for two people), $153 for food, $57 for motor vehicle expenses, and a total of $132.49 for additional expenses, including those for the minor child, e.g., "[b]us [p]ass, $3.85," "[s]chool lunches, $8.75," "[s]ummer camp, $4.32," and "[f]ield trips, $1.15." For herself, the wife listed only "[s]ubscriptions, $6.00," "[c]hurch giving, $5.00," "[e]ntertainment, $2.31," and "[n]urses [l]icense, CPR conference, $2.79."

community property division of retired pay [was] simply incon-
sistent with this explicit expression of congressional intent."
*Id.* at 227. The Court held that State courts, in dissolving mar-
riages, could not award retirement pay to the retirees' former
spouses, without explicit legislative correction from Congress.
*Id.* at 232-236.

Shortly afterwards, Congress responded with the Uniformed
Services Former Spouses' Protection Act (USFSPA), 10 U.S.C.
§ 1408 (1982). Section 1408 became effective in February,
1983, and applies to payments to military retirees after June 25,
1981, the day prior to the Supreme Court's decision in *McCarty
v. McCarty, supra.*[11] *Adkins* v. *Rumsfeld,* 464 F.3d 456, 460-
461 (4th Cir. 2006), cert. denied sub nom. *Adkins* v. *Gates,*
551 U.S. 1130 (2007).

The USFSPA "unambiguously leaves to the states the choice
of whether to treat disposable retired pay earned for service
during marriage as divisible property."[12] *Id.* at 461. After the
enactment of § 1408, "[i]t appears that nearly every state has
elected to treat military retired pay as divisible marital property.
See generally State-by-State Analysis of Divisibility of Mili-
tary Retired Pay, 2002 Army Law. 42." *Id.* at 462.

b. *Massachusetts law.* The Massachusetts Child Support
Guidelines specifically indicate that "veterans' benefits,"
"military pay, allowances and allotments," and "pensions" may
be considered as income when calculating an award. Mas-
sachusetts Child Support Guidelines I-A(9), I-A(10), I-A(14)
(2009). On the other hand, G. L. c. 208, § 34, amended by St.

---

[11] In so doing, "Congress exhibited special concern for the personal and
economic sacrifices that the spouse of a military service member makes to
sustain the marriage. See S.Rep. No. 97-502, at 6, 1982 U.S.C.C.A.N. at 1601
('Child care and management of the family household are many times solely
the spouse's responsibility. The military spouse lends a cohesiveness to the
family facing the rigors of military life, including protracted and stressful
separations')." *Adkins* v. *Rumsfeld,* 464 F.3d 456, 469 (4th Cir. 2006), cert.
denied sub nom. *Adkins* v. *Gates,* 551 U.S. 1130 (2007).

[12] USFSPA also provides that in order for a State to exercise jurisdiction
over the service member's pension rights, the State must be the member's
domicile or the member must consent to jurisdiction of the court. See 10
U.S.C. § 1408(c)(4); *McMahon* v. *McMahon,* 31 Mass. App. Ct. 504, 505
(1991). Here, although the husband was likely domiciled in Florida during the
divorce proceedings, through his pleadings and participation in the litigation,
he consented to jurisdiction of the Massachusetts court.

1990, c. 467, states, "In addition to or in lieu of a judgment to pay alimony, the court may assign to either husband or wife all or any part of the estate of the other, including but not limited to, all vested and nonvested benefits, rights and funds accrued during the marriage . . . [including] . . . military retirement benefits if qualified under and to the extent provided by federal law."

We begin by observing that "[i]n our ever complex times, various assets, e.g., pensions, stock options, bonuses, and contingencies, are difficult to categorize and value. Each case, each asset, is different and a 'one size fits all' rule is both impractical and potentially unfair." *Brower* v. *Brower*, 61 Mass. App. Ct. 216, 221 (2004). Therefore, judicial discretion to assess these assets for the purposes of determining property division and alimony and child support awards is crucial.

However, "[c]onsiderable as the trial judge's discretion may be in weighing these factors [under § 34], it is not unbounded . . . . It is the duty of the reviewing court to consider whether the apportionment of assets flows rationally from the judge's findings under § 34." *Denninger* v. *Denninger*, 34 Mass. App. Ct. 429, 430-431 (1993). Here, viewing the financial award as a whole, including the treatment of the husband's military pension as a stream of income, combined with the failure to award any alimony,[13] and the errors made in attributing income to the wife and in establishing the child support award (discussed further below), we conclude that the combination resulted in an inequitable award to the wife. Under all the circumstances, the judge's financial disposition leaves the parties in significantly disparate circumstances. The husband "is virtually guaranteed continued enjoyment of the secure, comfortable marital lifestyle." *Sampson* v. *Sampson*, 62 Mass. App. Ct. 366, 370 (2004). The wife has no such guarantee. See *Goldman* v. *Goldman*, 28 Mass. App. Ct. 603, 611 (1990) ("Absent good reason, in a long term marriage, there is no justification for the life-style of one spouse to go down while the other remains high"). See also *Kehoe* v. *Kehoe*, 31 Mass. App. Ct. 958, 959-960 (1992).

The majority of our cases have treated retirement benefits and

---

[13]In fact, the husband's attorney suggested in her opening statement that the wife should receive alimony.

pensions as marital assets subject to equitable distribution. See *Dewan* v. *Dewan*, 17 Mass. App. Ct. 97, 101-102 (1983) (husband's Federal civil service employee pension divided as a marital asset); *McMahon* v. *McMahon*, 31 Mass. App. Ct. 504, 508-509 (1991) (husband's military retirement benefits treated as an asset; where wife is not entitled under USFSPA to receive greater than fifty percent of the military pension, judge compensated wife by awarding her a greater percentage of the proceeds from the sale of the marital home); *Brower* v. *Brower*, 61 Mass. App. Ct. at 219-222 (for purposes of asset distribution, the judge calculated the value of the husband's retirement benefit, which was the primary marital asset, at the time of his retirement).

One exception is *Andrews* v. *Andrews*, 27 Mass. App. Ct. 759 (1989), cited by the judge in this case. In *Andrews*, this court found that a "judge acted within his discretion in treating the [husband's military] pension as a source for the payment of alimony," rather than an asset subject to equitable division. *Id.* at 761. The facts in *Andrews*, however, were very different. In that case, the wife's mental condition was unstable, and the judge, as indicated in our opinion, had laid great emphasis on her health and the uncertainty whether she would be able to work again. We held that the judge could well determine that a portion of the award, the husband's military pension, should remain flexible to take care of future events. Alimony, unlike division of property, is subject to modification. *Ibid.* Moreover, the total award to the wife was adequate. *Id.* at 760-761. She received sixty-five percent of the other marital assets and thirty percent of the husband's pension as alimony.

"Alimony and equitable division are interrelated remedies; the combination must make sense." *Id.* at 761. See *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 818 (1985) ("While equitable division may involve consideration other than those determinative of alimony, . . . an order for division of property cannot be viewed apart from alimony").

In the present case, the judge awarded no alimony. In so doing, he appeared to rely, at least in part, on income he attributed to the wife, finding that she was able to work full time. "In the proper circumstances, '[a] judge is not limited to a party's actual

earnings but may . . . consider potential earning capacity' when attributing income. *Heins* v. *Ledis*, 422 Mass. 477, 485 (1996). Attribution of income is particularly appropriate when a judge determines that a party . . . is voluntarily earning less than . . . she is capable of earning through reasonable effort." *C.D.L.* v. *M.M.L.*, 72 Mass. App. Ct. 146, 152 (2008). However, "[t]he issue of attributing income most commonly arises when a judge determines that a support provider is voluntarily earning less than he or she is capable of. . . . Less frequently, we have attributed income to a support recipient." *Kelley* v. *Kelley*, 64 Mass. App. Ct. 733, 741 (2005).

The judge found that the wife was working a thirty-five hour work week until September of 2008, when her employer reduced her hours to twenty-eight hours per week. He then attributed income, at her current salary rate, but adding an additional twelve hours, judging that she was capable of working forty hours per week. In this attribution, he stated that he considered her age, the child's age, her experience and field of expertise, nursing, and her current work schedule. The wife argues, and we agree, that imputation of income is not appropriate here where her part-time employment was not voluntary, as her employer had reduced her hours, and there was no reason to believe that she would be able to work more hours at the same job. See *Flaherty* v. *Flaherty*, 40 Mass. App. Ct. 289, 291 (1996). Nor was there any evidence about the availability of other full-time or part-time employment in the same geographic area, or any evidence about the wife's skill level or specialized training, or what salaries were commonly paid to someone in her situation. Contrast *Pierce* v. *Pierce*, 455 Mass. 286, 298-301 (2009). In addition there were few, if any, periods during the parties' long-term marriage when the wife worked full time. See *Flaherty* v. *Flaherty*, 40 Mass. App. Ct. at 291.

We have found no case, and the husband has brought no case to our attention, that treats a military pension as a stream of income without in some way compensating the other spouse for taking that asset out of the division of marital property by either an award of alimony or the allocation of other assets.[14] We also

[14] The judge's sole compensation to the wife seems to have been her short-term increased child support and the mere possibility of alimony in the future.

note that, contrary to the husband's contentions, the wife made significant sacrifices because of the husband's military career, including "lost jobs, master's degrees, and pensions." Nor is it significant, for these purposes, that the husband's pension was in pay status at the time of the divorce, see *Andrews* v. *Andrews*, 27 Mass. App. Ct. at 760, or that he faced the possibility of being recalled to active duty. See *McCarty* v. *McCarty*, 453 U.S. at 223 n.16; *Adkins* v. *Rumsfeld*, 464 F.3d at 462. In addition, although the judge noted the husband's ability to acquire greater income in the future, he did not judge that factor as supporting a larger award to the wife.[15]

Once the judge made the decision to treat the pension as income, and that the wife was not entitled to alimony, he *then* adopted the parties' stipulation to divide their remaining marital assets evenly. "[A]lthough the judge was apparently of the opinion that an equal division of the marital assets would be an equitable division, a close examination of his findings and judgment reveals that the purported 'evenhanded treatment was illusory.' " *Sampson* v. *Sampson*, 62 Mass. App. Ct. at 371, quoting from *Grubert* v. *Grubert*, 20 Mass. App. Ct. at 817. In all, the result to the wife was inequitable.

2. *Child support.*[16] The wife also contends that the following findings, related in whole or in part to the child support award, were clearly erroneous: (1) there was no evidence that the child required a level of care that prevented the wife from seeking full-time employment; (2) it was proper to impute income to the wife based on her ability to work full time, as she had on occasion in the past; (3) the husband's reimbursements for travel

[15]Finally, we note that the husband did not select a payment option that would have provided survivor's benefits to the wife in the event of his death, preferring instead to purchase a life insurance policy. On his advice, the wife waived her rights to the survivor's benefits. Had she not done so, she would have been entitled to receive eighty per cent of the husband's retirement pay for the rest of her life, upon his death. The judge ordered the husband to "maintain his current life insurance policy, provided via his employer, in the amount of $167,000 naming Wife as the beneficiary." It is not evident that a policy in such amount is an adequate substitute for a guaranteed eighty per cent of the pension for life. In addition, the judge did not indicate what, if anything, was required of the husband if he changed employers.

[16]This case was decided under the Massachusetts Child Support Guidelines, which became effective January 1, 2009.

expenses were not income under the Massachusetts Child Support Guidelines (guidelines); (4) the husband's financial statement listing expenses for visitation were accurate, despite the fact that he admittedly used frequent flyer miles and hotel rewards points to visit his daughter; and (5) the judge based the child support award on the presumption in the guidelines that the child spends one-third of her time with the noncustodial parent, here the husband.

At the outset, we note that our conclusion that the husband's pension should be classified as an asset, rather than a stream of income, may have an impact on the child support award in view of the judge's statement that "[t]reating the military pension as a source of income entitles Wife to a greater child support amount." For this reason, if for no other, the child support order must be set aside. Nonetheless, we address the wife's specific contentions as they also affect child support.

To the extent that the wife challenges findings that are based upon credibility determinations, we defer to the judge's findings. *Comins* v. *Comins*, 33 Mass. App. Ct. 28, 34 (1992). Mass. R.Dom.Rel.P. 52(a) (2008). Specifically, despite the wife's testimony that the special needs of her daughter prevented her from seeking full-time employment, the judge found the daughter's needs were not so significant as to interfere with her ability to work full time. See *Piemonte* v. *New Boston Garden Corp.*, 377 Mass. 719, 733 (1979) (judge not required to believe evidence even when uncontroverted). Similarly, the judge credited the husband's estimation of his expenses for visiting his daughter and found them to be reasonable, despite the wife's argument that he used frequent flyer miles and hotel rewards points during his visits.

The remaining errors noted by the wife are in a different posture. First is attribution of income to her, which we have previously discussed. Second, the judge, in failing to consider the husband's travel reimbursements as part of his income, may well have underestimated that income. The husband works full time as a defense contractor, with a gross weekly wage of $2,160; he travels on average two weeks a month. As a result, he receives large reimbursement checks for his food, lodging, flights, and other incidental travel expenses. He argues that

this money is not additional income but merely repaid money and also that the reimbursements were less than the money he actually spent on travel and incidentals for work; the judge agreed.

The most recent guidelines provide: "Expense reimbursements, in-kind payments or benefits received by a parent, personal use of business property, payment of personal expenses by a business in the course of employment, self-employment, or operation of a business may be included as income if such payments are significant and reduce personal living expenses." Massachusetts Child Support Guidelines I-C (2009). The guidelines and our case law leave the definition of income flexible, and the judge's discretion in its determination broad. See *Whelan* v. *Whelan*, 74 Mass. App. Ct. at 625. Here, however, the husband testified at trial that he travels on average two weeks a month; in this circumstance, his reimbursements — even if they did not exceed his outlay — may very well reduce his living expenses.[17]

The wife again points to the husband's financial statement and argues that he failed to include in his income the $29 per week that he receives as veteran's disability pay. "[T]the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (2000), which provides for the divisibility of military retirement pensions, does not permit State courts 'to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits.' " *Krapf* v. *Krapf*, 439 Mass. 97, 108 (2003), quoting from *Mansell* v. *Mansell*, 490 U.S. 581, 595 (1985).

However, State courts are not precluded from considering these benefits as a portion of the husband's income for purposes of child support or alimony. In fact, in *Rose* v. *Rose*, 481 U.S. 619, 634 (1987), the United States Supreme Court held that veteran's disability "benefits are intended to support not only the veteran, but the veteran's family as well." The *Rose* case determined that antiattachment provisions and sim-

---

[17]Obviously, reimbursements for flights and hotels do not reduce the husband's living expenses on the facts of this case; in addition, certain expenses, such as mortgage payments, are fixed and therefore are not reduced by travel reimbursements. Here, we are talking about reimbursements for food, entertainment, and vehicle expenses that would reasonably be expected to diminish for someone who spends one-half of his time traveling.

ilar provisions of Federal law governing veteran's disability benefits did not conflict with the enforcement of State child support awards even where disability benefits represented the veteran's sole source of income and would necessarily be used to pay child support. *Ibid.* See *Krapf* v. *Krapf*, 439 Mass. at 108 n.11 ("The Federal act does permit courts to order alimony payments from VA disability benefits. See 10 U.S.C. § 1408[a][2][B][ii]"). It was error, therefore, for the husband to fail to include the disability payment amount in his financial statement listing his income.

Finally, as the wife notes, the guidelines are based on the presumption that the child has a primary residence with one parent and spends approximately one-third of her time with the other parent. See Massachusetts Child Support Guidelines II-D (2009). As the judge observed when he awarded physical custody to the wife, the husband resided in Florida at the time of divorce, and the wife and minor child in Massachusetts; thus, shared physical custody was not practical, and the husband primarily communicated with the child "via email, telephone and a web camera." The testimony was that the husband saw the child at most five times in the two years leading up to the trial. Therefore, to the extent that the judge based his child support award on a presumption that the child spends one-third of her time with her father, this was error.

3. *Appellate attorney's fees.* The wife contends that she should be awarded appellate attorney's fees as she was forced to appeal due to the "lopsided" property division. Despite our decision to reverse the judgment due to the inequitable financial award and the errors made in the child support award, we do not believe the errors entitle the wife to appellate attorney's fees. See *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004).

4. *Conclusion.* We vacate so much of the judgment as fails to include the husband's military pension as an asset for division. Under the circumstances of this case, findings are needed to support a new order as to the percentage of the pension that the wife is entitled to, as a divisible marital asset.[18] See 10 U.S.C. § 1408(e)(1). We also vacate the order for child support.

---

[18]At trial, the wife offered testimony that, based upon the husband's length of service, twenty years, two months, and twenty-four days, and the fact that

However, unless the judge for good written reason decides otherwise, pending further proceedings, the current child support order shall remain in place as a temporary order.[19] The judge may hold such further hearing as is necessary and desirable. We affirm the remaining aspects of the divorce judgment.

*So ordered.*

---

the marriage overlapped his service period for a period of "10.4331 years," she would be entitled to 25.78% of the husband's retirement pay. The husband agreed to "stipulate that military pensions can be divided . . . [and] that it's easy to do so if the court determined that . . . was the appropriate way of doing it."

[19]"Any proceedings necessary to enforce payment are to be brought in the Probate Court." *Kennedy* v. *Kennedy*, 400 Mass. 272, 276 (1987).