NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-905

ROBYN B. WATERMAN

vs.

RONALD J. WATERMAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Ronald J. Waterman (husband), the former spouse of Robyn B. Waterman (wife), principally appeals from a July 2022 judgment, issued by a Probate and Family Court judge, that adjudicated the wife's complaint for contempt alleging that the husband violated the judgment of divorce nisi (divorce judgment) by failing to satisfy his obligations related to certain military benefits. Though the judge ultimately found the husband not guilty of contempt, the judge entered a military qualifying court order (MQCO) requiring the husband to pay to the wife fifty percent of his disposable military retired pay that accrued during the marriage.  The husband appeals from the July 2022 judgment, and from the judge's orders allowing the wife's motion for

attorney's fees and denying the husband's postjudgment motions to amend the July 2022 judgment.  We vacate so much of the judgment as amended the MQCO to include an incorrect marital coverture period for the husband's military pension, and remand the case for the limited purpose of entering a modified judgment and MQCO setting forth the correct marital coverture period.  We affirm the judgment as so modified, and we also affirm the orders allowing the wife's motion for attorney's fees and denying the husband's postjudgment motions.

Background.  The parties were married for nearly fifteen years, from August 1984 until June 1999, during which time the husband served in the military for almost eight years.  The parties executed a separation agreement in 1999, which was incorporated into and merged with the divorce judgment.  In the agreement, both parties waived alimony "at the present time," without waiving the "right to seek alimony in the future."[1]  The agreement provided that military separation pay, which the husband was then receiving under a voluntary separation incentive (VSI) program, would be divided between the parties, with one-third being paid to the wife as lump sum child support

---

[1] The parties signed the separation agreement more than a decade before the Alimony Reform Act, St. 2011, c. 124 (eff. March 1, 2012).

2

until the children's emancipation.  As to the husband's pension, the agreement provided as follows (pension clause):

> "To the extent that the [h]usband is entitled to any military or other pension up to the date of this agreement, the [w]ife shall be entitled to receive 50% thereof via appropriate Q[ualified] D[omestic] R[elations] O[rder] or other order.  The [h]usband shall have an affirmative obligation to immediately report the existence and status of any such pension rights to the [w]ife as soon as he becomes aware of same."

In 2022, in furtherance of the pension clause, the wife arranged for an attorney to draft the MQCO, which provided that the wife would receive "50% per month from the [husband]'s disposable military retired pay."  The husband refused to sign the MQCO.  The wife filed a complaint for contempt alleging that the husband had violated the pension clause by refusing to cooperate in the preparation of the MQCO.  The husband moved to dismiss the complaint, arguing that because he did not receive his military pension until 2021 it was not governed by the pension clause.

After a nonevidentiary hearing on the complaint for contempt, the judge concluded that the pension clause was a clear and unequivocal order requiring the husband to report his receipt of the military pension to the wife.  However, the judge concluded that the wife had not proven by clear and convincing evidence that the husband had violated that order by refusing to execute the MQCO, because the pension clause did not specify a

3

time frame for its execution and the inference that the husband was required to do so within a reasonable time was insufficient to sustain a finding of contempt.

As to the proposed MQCO, the husband argued that it would improperly award the wife a portion of his pension benefits that accrued after the marriage. To address the husband's concerns, the judge amended the MQCO so that it awarded the wife fifty percent per month of the husband's disposable military retired pay that "the [husband] accrued during the marriage." The judge's amendment to the MQCO, however, contained a scrivener's error insofar as the marital coverture period was incorrectly stated as beginning on August 11, 1994, rather than August 11, 1984 (the latter being the correct date that the parties were married).[2] The judge rejected the husband's argument that because the pension clause referred to any pension to which he "is entitled . . . up to the date of th[e] [separation a]greement," any right of the wife to a portion of his pension was extinguished when the parties executed the agreement in 1999, and did not apply to the military pension that he received beginning in 2021.

---

[2] The judge's amendment to the MQCO referred to the marital coverture period as "8/11/94 to 6/16/99" (emphasis added). According to the complaint for divorce and divorce judgment, the parties were married on August 11, 1984.

The judge ruled that, although the husband was not guilty of contempt, it was "only equitable" to award the wife her attorney's fees because she "made several attempts to resolve this matter prior to filing a [c]omplaint," and the husband "refused to engage in any meaningful conversation with counsel . . . regarding his issues with the language of the MQCO."  Judgment entered incorporating the MQCO as amended by the judge (including the aforementioned scrivener's error with respect to the parties' wedding date).

The husband moved to alter or amend the judgment, Mass. R. Dom. Rel. P. 59 (e), and to amend the judge's findings, Mass. R. Dom. Rel. P. 52 (b).  He argued that he never would have signed the separation agreement had he understood the meaning of the pension clause, and because the wife had already received a portion of his VSI benefit she should not also be entitled to a portion of his military pension benefit.  The judge denied the motions to amend the judgment.  The present appeal by the husband followed.

Discussion.  1.  Interpretation of pension clause.  The husband argues that the judge erred in interpreting the pension clause to require the husband to pay the wife half of his disposable retired pay accrued during the marriage.  We review de novo the judge's rulings of law, including her interpretation

5

of the parties' separation agreement. See Tompkins v. Tompkins, 65 Mass. App. Ct. 487, 494 (2006).

In 1982, Congress enacted the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408. In 10 U.S.C. § 1408(c)(1), the USFSPA provides that military pensions may be divisible under state divorce law in the same manner as other marital assets to the extent that what is divided is "disposable retired pay" as defined in 10 U.S.C. § 1408(a)(4). See Mansell v. Mansell, 490 U.S. 581, 588-589 (1989). See also Howell v. Howell, 581 U.S. 214, 215-216 (2017). A state comports with the USFSPA by treating as divisible marital property "disposable retired pay earned for service during marriage." Casey v. Casey, 79 Mass. App. Ct. 623, 628 (2011), quoting Adkins v. Rumsfeld, 464 F.3d 456, 461 (4th Cir. 2006). Since the enactment of the USFSPA, "nearly every state has elected to treat military retired pay as divisible marital property" (citation omitted). Casey, supra. Massachusetts has done so pursuant to G. L. c. 208, § 34, which includes "military retirement benefits" among those assets that are subject to equitable division during a divorce. See Casey, supra at 628-629. By entering the MQCO to effectuate the pension clause, the

judge divided the husband's disposable retired pay as permitted by the USFSPA.[3]

The husband argues that the judge erred in interpreting the language of the pension clause that states, "[t]o the extent that the [h]usband is entitled to any military or other pension up to the date of this agreement the [w]ife shall be entitled to receive 50% thereof" (emphases added).  He contends that the verb "is entitled," in the present tense, and the phrase "up to the date of" collectively mean that the pension clause applied to benefits which he was entitled to receive as of the date of the separation agreement, June 16, 1999, and not, as the judge interpreted it, pension benefits that he had accrued as of that date.  We are not persuaded.  See McMahon v. McMahon, 31 Mass. App. Ct. 504, 508-509 (1991) (at time of divorce, husband was in Air Force; judge properly awarded wife percentage of retirement pay which husband began receiving after divorce).

The judge interpreted the pension clause to mean that the husband's future interest in any military pension he accrued during the marriage would be shared with the wife.  The language

_____

[3] To the extent that the husband argues that the judge should have allowed his motion for judicial notice of the USFSPA, rather than taking no action on the motion, we conclude, assuming without deciding, that even if the husband is correct, he was not prejudiced.  As we explained, the judge's interpretation of the pension clause and entry of the MQCO comported with the USFSPA.

7

of the pension clause supported that interpretation, because it directed that the wife would receive her share of the husband's military pension "via appropriate QDRO or other order."  The MQCO is "[an]other order" similar to a QDRO, which is a court order dividing a spouse's interest in a pension.  See Early v. Early, 413 Mass. 720, 722 n.3 (1992).

The husband contends that because he was not entitled to receive his military pension until he completed twenty years of service in 2021, it did not meet the definition of a pension to which he "is entitled" as of 1999, as defined in the pension clause.  Whether or not the husband's pension was in pay status at the time of the divorce was not significant.  See Casey, 79 Mass. App. Ct. at 632.  As of the divorce, the husband was entitled to a property interest in so much of the military pension as he had accrued up to that date, even if he did not vest in or begin collecting it until after the marriage.  See Brower v. Brower, 61 Mass. App. Ct. 216, 218-220 (2004) (rejecting husband's argument that wife not entitled to portion of his public pension accrued during marriage, where it was computed based on his three highest years of service that did not occur until after marriage).  If the husband's interpretation of the pension clause were correct, then it would pertain to an asset that did not exist when the parties signed the separation agreement, not even as a contingent or possible

8

future property interest.  We will not interpret the pension clause to be meaningless.  See Duval v. Duval, 101 Mass. App. Ct. 752, 760 (2022) ("every word and phrase of a contract should, if possible, be given meaning, and . . . none should be treated as surplusage if any other construction is rationally possible" [citation omitted]).  We agree with the judge's interpretation of the pension clause.

The husband makes assertions about the circumstances of his signing the separation agreement and his discussions with the wife's lawyer in 1999 about the pension clause, contending that the separation agreement "never contemplated division of any future pensions."  "To the extent that [the husband]'s unhappiness with the [MQCO] may be seen as a claim that it does not accurately reflect his understanding of the agreement, or that it is unfair, his claim comes too late."  Tompkins, 65 Mass. App. Ct. at 496.

In the separation agreement, the wife agreed to forego present alimony.  Cf. Casey, 79 Mass. App. Ct. at 629, 632 (division of marital assets inequitable to wife, where judge treated husband's Air Force pension as income rather than divisible asset, and did not award wife alimony).  The wife also took the chance, based on variables that could not be determined in advance, that she would receive a portion of the husband's military pension.  Cf. Brower, 61 Mass. App. Ct. at 219 (value

9

of husband's pension depended on "variables that could not be determined in advance"; he "could retire in a day, a year, or a decade"). In those circumstances, the wife is entitled to the benefit of her bargain as incorporated into the divorce judgment.

2. VSI benefit as equivalent to pension. The husband argues that his VSI benefit was the functional equivalent of a pension, and therefore it was the "military or other pension" referred to in the pension clause. He contends that because he already paid a portion of the VSI benefit to the wife, he should not also be required to pay the wife a portion of his military pension. The argument is unavailing. It would make no sense for the separation agreement to have both the military separation pay clause and the pension clause if both clauses allocated the VSI benefit. See Duval, 101 Mass. App. Ct. at 760. Moreover, the agreement expressly required the husband to pay the wife thirty-three percent of his VSI benefit as lump sum child support (in addition to his weekly child support payments), with the obligation terminating on the emancipation of the parties' children. Thus, unlike the husband's military pension (which was part of the property division), the husband's VSI benefit was, in essence, treated as income for purposes of child support.

10

The husband also argues that because his total monthly retired pay is lessened to recoup the VSI benefit already paid to him, see 10 U.S.C. § 1408(a)(4)(A), he should not be required to pay the wife a portion of his military pension. That recoupment is precisely why the MQCO is worded so that it divides as marital property the husband's "disposable retired pay," 10 U.S.C. § 1408(a)(4), and not the husband's total monthly retired pay. See Mansell, 490 U.S. at 589. See also Howell, 581 U.S. at 223 (divorce decree improperly "divided the whole of [husband]'s military retirement pay"). The language of the MQCO comports with the USFSPA.

3. Award of attorney's fees to wife. The husband argues that because the judge did not find the husband guilty of contempt, the judge should not have awarded attorney's fees to the wife. In declining to find the husband in contempt, the judge concluded that the pension clause was a clear and unequivocal order requiring the husband to pay the wife half of the disposable military retired pay that he accrued during the marriage; however, it did not contain a clear and unequivocal command as to a specific time frame in which the husband was required to execute the MQCO. See Birchall, petitioner, 454 Mass. 837, 851-852 (2009).

Simply because the husband avoided a contempt finding did not absolve him of paying those reasonably incurred attorney's

11

fees that the wife was required to expend to enforce the clear and unequivocal order contained in the pension clause in the divorce judgment. See Coppinger v. Coppinger, 57 Mass. App. Ct. 709, 714-715 (2003). See also Hennessey v. Sarkis, 54 Mass. App. Ct. 152, 156-157 (2002). Moreover, the judge had the authority, separate from any contempt determination, to award either party fees in her discretion. See Cooper v. Cooper, 62 Mass. App. Ct. 130, 141, 143-144 (2004), citing G. L. c. 208, § 38. We therefore discern no abuse of discretion in the judge's decision to award attorney's fees to the wife.

4. Appellate attorney's fees and costs. The husband requests that we award him appellate attorney's fees and costs. We decline to do so. See Freidus v. Hartwell, 80 Mass. App. Ct. 496, 504 (2011) (husband found not in contempt, attorney's fees denied for both sides). Contrast Kelley v. Kelley, 64 Mass. App. Ct. 733, 742-743 (2005) (wife granted attorney's fees after husband misrepresented income and transferred assets to hide them from wife).

Conclusion. So much of the July 29, 2022 judgment as amended the MQCO to include a marital coverture period beginning on August 11, 1994, is vacated, and the case is remanded for the limited purpose of entering a modified judgment and MQCO setting forth the correct marital coverture period beginning on August 11, 1984. As so modified, the judgment is affirmed. The order

12

dated September 9, 2022, allowing the wife's motion for attorney's fees is affirmed. The order dated June 6, 2023, denying the husband's postjudgment motions is affirmed.

<u>So ordered</u>.

By the Court (Desmond, Hand & Grant, JJ.[4]),

Assistant Clerk

Entered: June 17, 2024.

---

[4] The panelists are listed in order of seniority.